STATE OF NEBRASKA, APPELLANT,
v. TIM BOTTOLFSON, APPELLEE.

610 N.W. 2d 378

Filed May 12, 2000.    No. S-99-746.

Nathan B. Cox, Deputy Adams County Attorney, for appellant.

Arthur C. Toogood, Adams County Public Defender, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Tim Bottolfson was charged with one count of terroristic threats, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 1995), and one count of use of a weapon to commit a felony, pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 1995). A preliminary hearing was held, and the county court found that probable cause existed for the charges and bound the case over to the district court. The State filed an information in the district court charging Bottolfson with terroristic threats and use of a weapon to commit a felony. Bottolfson subsequently filed a plea in abatement in the district court, which was sustained. The State filed application for leave to docket error proceedings pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1995). The Nebraska Court of Appeals granted the application, and this appeal ensued. The case was thereafter moved to this court's docket, pursuant to our authority to regulate the caseloads of this court and the Court of Appeals.

## BACKGROUND

Bottolfson was charged with terroristic threats and use of a weapon to commit a felony for acts that occurred on February 21, 1999, involving Mary J. Allen. A preliminary hearing was held in the Adams County Court.

Allen testified at the preliminary hearing, giving her account of what happened. Allen testified that on February 21, 1999, she was walking her two Old English Sheepdogs at around 1:30 a.m. in Hastings, Nebraska. One dog was on a leash and the other was not. Allen was accompanied by three other people. During the walk, a car passed Allen and the others with her, made a U-turn, and parked on the opposite side of the street from where Allen and the others were walking. Two men exited the vehicle and starting whistling at Allen's dogs. Allen testified that she asked the men to stop whistling because it was upsetting her dogs. The two men then started across the street; one stopping in the street, and the other continuing across the street until he

met Allen and the others. The man who continued across the street was later identified as Bottolfson. Allen testified that Bottolfson began pushing Dustin Nebe, one of the persons with Allen, and swinging at him, striking him once in the face. Allen testified that at this point, her dogs began to act "crazy." The dog on the leash was growling and pulling on the leash. Sharon Fox, another person with Allen, got between Bottolfson and Nebe and told Bottolfson to leave Nebe alone. Allen testified that Bottolfson then walked toward Allen, and when he got within about 5 feet of her, he pulled a knife out of his pocket. Allen described the knife as a pocketknife with a 2½- to 3-inch blade. Bottolfson got within 2 to 3 feet of Allen, held the knife in his hand with the blade pointed toward Allen, and threatened Allen and one of her dogs. Allen testified that Bottolfson said, "I'm going to kill you and your fuckin' dog." Allen told Bottolfson that he had better leave because she was going to call the police. Allen and the others with her began walking away, and Bottolfson left. Allen subsequently went home and called the police. Allen testified that she was scared by Bottolfson's actions toward her and that she felt threatened.

Robert Bednar, the Hastings police officer who was dispatched to investigate Allen's police call, also testified at the preliminary hearing. Bednar testified as to what Nebe and Fox told him about the incident. Bednar testified that Nebe and Fox both told him basically the same account of what Allen testified to at the hearing. Specifically, Bednar testified that Nebe told him he had seen the knife come out of Bottolfson's right-hand pocket and saw him open up the knife and approach Allen. Bednar could not recall whether Nebe indicated that he had or had not heard anything that was said between Allen and Bottolfson. Bednar testified that Fox indicated she had witnessed the same incident as that described by Allen, and Bednar recalled Fox telling him that she had heard what Bottolfson said to Allen about "the dog getting cut up and [Allen] getting cut up." Bednar described the knife that was recovered from Bottolfson as a "[r]egular folding, buck-type knife," having a 3-inch blade.

At the end of the hearing, the county court found that the State had established probable cause that both crimes had been committed and bound Bottolfson over to the district court.

An information was filed in the district court alleging terroristic threats and use of a weapon to commit a felony. Bottolfson entered a not guilty plea, which was subsequently withdrawn on a motion of Bottolfson. Bottolfson then filed a motion for plea in abatement alleging insufficiency of the evidence at the preliminary hearing. The district court granted Bottolfson's motion to withdraw his not guilty plea and subsequently heard arguments on Bottolfson's plea in abatement. The only evidence introduced was the transcript of the preliminary hearing. The district court sustained the plea in abatement, finding:

[T]he Court hereby sustains the plea in abatement. The Court finds the evidence is lacking to show intent to terrorize another. The evidence is sufficient to substantiate a third degree assault which is a class I misdemeanor.

WHEREFORE the Court finds that count one should be and hereby is dismissed without prejudice. It may be refilled [sic] in County Court as a misdemeanor. Count two is dismissed with prejudice as the knife does not meet the statutory length of 3½ inches and count one is not a felony.

The State filed an application for leave to docket error proceedings with the district court, which application the district court approved. The State then filed the application with the Court of Appeals, which granted the application, and this appeal ensued. We subsequently removed the case to our docket.

## ASSIGNMENTS OF ERROR

The State assigns that the district court erred in (1) finding that the State had not shown probable cause of terroristic threats, pursuant to § 28-311.01, but had demonstrated probable cause of assault in the third degree, pursuant to Neb. Rev. Stat. § 28-310 (Reissue 1995); (2) making findings of fact not supported by the evidence offered during Bottolfson's plea in abatement hearing; (3) addressing issues of fact and not just questions of law in granting Bottolfson's plea in abatement; and (4) misinterpreting the statutory definition of "knife" found in Neb. Rev. Stat. § 28-1201(4) (Reissue 1995) and, thus, determining that any knife with a blade of less than 3½ inches is not a knife for purposes of § 28-1205.

■ The instant appeal is before this court as an error proceeding filed by the county attorney pursuant to § 29-2315.01, which states in part that "[t]he county attorney may take exception to any ruling or decision of the court made during the prosecution of a cause by presenting to the trial court the application for leave to docket an appeal with reference to the rulings or decisions of which complaint is made." The scope and purpose of appellate review in error proceedings are defined in Neb. Rev. Stat. § 29-2316 (Reissue 1995). The purpose of the review is to provide an authoritative exposition of the law to serve as precedent in future cases. *State v. Portsche*, 258 Neb. 926, 606 N.W.2d 794 (2000). In the instant case, because jeopardy has not attached, this court's decision will affect the judgment of the district court herein.

## STANDARD OF REVIEW
■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Spotts*, 257 Neb. 44, 595 N.W.2d 259 (1999); *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999); *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998).

## ANALYSIS
The State argues that the district court erred in sustaining Bottolfson's plea in abatement, which challenged the sufficiency of the evidence at the preliminary hearing.

■ In order to resist a challenge by a plea in abatement, the evidence received by the committing magistrate need only show that a crime was committed and that there is probable cause to believe that the accused committed it. The evidence need not be sufficient to sustain a verdict of guilty beyond a reasonable doubt. *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982); *Delay v. Brainard*, 182 Neb. 509, 156 N.W.2d 14 (1968).

Bottolfson was charged with terroristic threats and use of a weapon to commit a felony. Under § 28-311.01(1), "[a] person commits terroristic threats if he or she threatens to commit any crime of violence: (a) With the intent to terrorize another . . . or (c) In reckless disregard of the risk of causing such terror . . . ." A terroristic threat is a Class IV felony.

We have examined the record made at the preliminary hearing, which was introduced as evidence at the plea in abatement hearing, and conclude that it supports a finding of probable cause that the crime of terroristic threats was committed and that Bottolfson committed it. Bottolfson approached Allen, after fighting with Allen's companion, and pulled out a knife. While standing within 3 feet of her, Bottolfson pointed the knife at Allen and threatened Allen's life. Thus, the evidence is sufficient to conclude that Bottolfson threatened to commit a crime of violence against Allen. There is also sufficient evidence to show probable cause that Bottolfson possessed the intent to terrorize Allen or the reckless disregard of the risk of causing such terror. Allen testified that Bottolfson's actions scared her and that she felt threatened. There was probable cause to conclude that a reasonable person would be terrorized by Bottolfson's actions. It will be up to a jury to decide whether the evidence is sufficient for a determination of guilt beyond a reasonable doubt. We conclude the district court erred in finding that the evidence was lacking to show intent to terrorize and in dismissing the felony charge of terroristic threats against Bottolfson.

Having concluded there was sufficient evidence for the terroristic threats charge against Bottolfson, we must also address the State's argument that the district court misinterpreted the statutory definition of "knife" found in § 28-1201(4) and erred in determining that any knife with a blade less than 3½ inches is not a knife for purposes of § 28-1205.

Section 28-1205(1) states as follows:

> Any person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state or who unlawfully possesses a firearm, a knife, brass or iron knuckles, or any other deadly weapon during the commission of any felony which may be prosecuted in a court of this state commits the offense of using a deadly weapon to commit a felony.

Section 28-1201 defines knife for "purposes of sections 28-1201 to 28-1212 [as] (4) . . . any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length or any other dan-

gerous instrument capable of inflicting cutting, stabbing, or tearing wounds."

The question we are faced with is whether the knife used by Bottolfson meets the statutory definition of knife under § 28-1201, thereby making it a deadly weapon for purposes of § 28-1205. The State contends that a knife with a blade less than 3½ inches in length, such as the one involved in the present case, falls within the "any other dangerous instrument" language.

Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999); *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999); *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999).

In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. State v. Cox, 247 Neb. 729, 529 N.W.2d 795 (1995).

In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of the court to read anything plain, direct, and unambiguous out of the statute. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996); *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995); *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

The definition of knife found in § 28-1201(4) can be divided into two phrases. The first phrase is "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length." Penal statutes are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998). It is obvious that the Legislature, in enacting § 28-1201(4), did not intend that any knife be a "per se" deadly weapon under § 28-1205. We determine that the Legislature intended the words "with a blade over three and one-half inches" to apply to daggers, dirks, knives, and stilettos, such that any of these items

having blades over 3½ inches are "knives" under § 28-1201(4). We further determine that the Legislature, in enacting the first phrase of § 28-1201(4), designated certain items (daggers, dirks, knives, or stilettos with blades over 3½ inches) as knives per se. In other words, the named items in the first phrase of § 28-1201(4) are automatically considered to be knives for purposes of § 28-1205(1), and the State does not have to prove that these items are dangerous instruments capable of inflicting cutting, stabbing, or tearing wounds.

The second phrase of § 28-1201(4) contains the language "any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds." This phrase refers to instruments other than those specifically mentioned in the first phrase of the definition of knife. We determine that when a case involves an instrument not specifically named in § 28-1201(4), the Legislature intended that the State should bear the burden of proving that the instrument is a dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds, and thus is a "knife" for purposes of § 28-1205(1). In other words, the question of whether an instrument that is not specifically mentioned in the statute is a knife is a question of fact to be decided by the trier of fact.

We conclude that the knife in this case does not fall under the first phrase of the statutory definition of knife found in § 28-1201 because it did not have a blade over 3½ inches. Thus, it was not a knife per se under the definition. However, the knife in this case may fall under the second phrase of the statutory definition of knife, but this is up to the State to prove and the trier of fact to decide. Therefore, the district court erred in dismissing the use of a weapon to commit a felony charge against Bottolfson.

As stated earlier, this is an appeal by a county attorney pursuant to § 29-2315.01. Section 29-2316 describes the effect of the appellate court's ruling pursuant to § 29-2315.01:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any

similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the county attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.

Having concluded that the district court erred in sustaining Bottolfson's plea in abatement, pursuant to § 29-2316, we must determine whether jeopardy had attached before the district court sustained the plea in abatement.

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and of article I, § 12, of the Nebraska Constitution protects " 'an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' " *State v. Bostwick,* 222 Neb. 631, 642, 385 N.W.2d 906, 914 (1986), quoting *Green v. United States,* 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). Under Neb. Const. art. I, § 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt or innocence of the defendant. *State v. Franco,* 257 Neb. 15, 594 N.W.2d 633 (1999). In a case tried to a jury, jeopardy attaches when the jury is empaneled and sworn. *State v. Bostwick, supra.*

In the instant case, we conclude that jeopardy had not attached before the district court sustained the plea in abatement. A jury had not been sworn and empaneled, nor had the district court heard evidence as to the guilt or innocence of Bottolfson. Therefore, under § 29-2316, because jeopardy has not attached, our decision reverses the district court's judgment sustaining Bottolfson's plea in abatement.

## CONCLUSION

The district court erred in sustaining Bottolfson's plea in abatement. Specifically, it erred in dismissing the terroristic threats charge against Bottolfson and erred in dismissing the use of a weapon to commit a felony charge. We therefore sustain the

State's exception. Because jeopardy had not attached at the time the district court sustained the plea in abatement, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.