STATE OF NEBRASKA, APPELLEE, V.
DAMIAN J. MARSHALL, APPELLANT.
690 N.W.2d 593

Filed January 7, 2005. No. S-03-893.

Brian S. Munnelly for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In 1996, Damian J. Marshall was tried before a jury and convicted of second degree murder, attempted second degree murder, and two counts of using a firearm to commit a felony. His convictions were affirmed by this court on direct appeal. *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998). On January 31, 2003, Marshall filed a pro se motion for postconviction relief. The district court for Douglas County denied the motion without conducting an evidentiary hearing. Marshall appeals from that order.

## FACTS

The facts underlying Marshall's convictions are set forth in detail in our opinion in *State v. Marshall, supra,* and need not be fully reiterated here. Rather, we summarize those facts which relate directly to this postconviction proceeding.

Prior to Marshall's jury trial and conviction, two mistrials were declared, resulting in the discharge of the two jury panels which had been sworn. The first jury selection occurred on January 30, 1996. The court called 24 prospective jurors for voir dire. Following voir dire, each party exercised six peremptory challenges. The remaining 12 jurors and a subsequently selected alternate were sworn.

During the noon recess, C.B., one of the 12 sworn jurors, advised the bailiff that he was not sure he could hear the case. C.B. was brought into chambers and questioned by the judge and counsel. C.B. stated that he had read about the case in the newspapers and that he had been charged with manslaughter 12 years earlier, but the charges were dismissed because "it was ruled self-defense." Upon questioning, C.B. indicated that he did not think his knowledge and personal experience would reflect on his ability to be a fair and impartial juror. The judge expressed concern about whether C.B. should be removed from the jury based upon his statements and requested counsel to bring case law on the subject after a recess.

When court reconvened, the judge advised counsel that he would have excused C.B. on his own motion during voir dire if the information about C.B.'s previous arrest and manslaughter charge had been disclosed at that time. The prosecutor presented the court with documents pertaining to the charges which had been filed against C.B., which documents disclosed that the case had progressed further than indicated by C.B. before it had been dismissed. The prosecutor thereafter made a motion for mistrial without prejudice. Marshall's trial counsel opposed the motion.

After further discussion with both counsel on the same day, the judge advised counsel that because of potential bias on the part of C.B., "in good conscience I simply can't let the trial progress." He thereafter sustained the State's motion for mistrial without prejudice and discharged the jury. The record reflects no discussion with respect to replacing C.B. with an alternate juror.

On March 1, 1996, Marshall filed a plea in bar alleging that the mistrial was granted in error and that another trial would subject him to double jeopardy. The motion was heard and taken under advisement on April 22, 1996. On the same day, the second jury selection was conducted. Thirty-six prospective jurors were randomly chosen for voir dire. At the conclusion of voir dire, the prosecution and Marshall each exercised 12 peremptory challenges and the remaining 12 jurors were sworn. After a recess, the judge and counsel met with one of the jurors who disclosed that he had formed an opinion about Marshall's guilt. He was excused from the jury. The judge then proposed to counsel that two jurors be selected from a pool of six prospective jurors in order to provide one alternate and another juror to replace the juror who was excused. A discussion ensued about whether a mistrial should be declared instead. The judge declared a mistrial without prejudice to the prosecution, stating that it "would be unfair to the defendant to proceed" and "further participation of this jury in this case would lead to a substantial miscarriage of justice." Defense counsel, who had argued that a mistrial was the correct procedure, did not object.

On June 25, 1996, defense counsel made an oral plea in bar with respect to the second mistrial. On that same date, the district court overruled both pleas in bar. No appeal was taken from that order. Later the same day, a third jury selection was conducted.

Thirty-six prospective jurors were randomly selected by the court for voir dire, each side exercised 12 peremptory challenges, and the jury was sworn. Thereafter, an alternate was selected and sworn and trial commenced. After the jury returned verdicts of guilty and sentences were imposed, Marshall filed his direct appeal.

Marshall's trial counsel did not represent him on appeal. His appellate counsel assigned 10 errors, including the granting of both mistrials and ineffective assistance of trial counsel. Appellate counsel argued that because the mistrials were erroneously granted, jeopardy attached, and that the trial court therefore erred in overruling Marshall's pleas in bar. We held that because Marshall did not file a timely appeal from the order denying his pleas in bar, we lacked jurisdiction to review the double jeopardy claim. We considered and rejected Marshall's contention that his trial counsel was ineffective for four specific reasons. However, Marshall did not assign on direct appeal that his trial counsel was ineffective in not perfecting a timely appeal from the denial of his pleas in bar.

Marshall filed his motion for postconviction relief on January 31, 2003, asserting ineffective assistance of trial counsel, ineffective assistance of appellate counsel in several particulars, prosecutorial misconduct, and denial of due process. Marshall specifically alleged that his trial counsel was ineffective in failing to commence a timely appeal from the denial of his pleas in bar and that his appellate counsel was ineffective in failing to raise this and other issues on direct appeal. In an order entered on July 16, the district court denied postconviction relief without an evidentiary hearing based upon its conclusion that the issues raised in the postconviction motion could have been raised on appeal and were therefore procedurally barred. With respect to the fact that no timely appeal was taken from the denial of the pleas in bar, the court noted:

> At the time of the failure to timely appeal the denial of the plea in bar, the record clearly reveals [Marshall] was represented by his trial counsel and not his appellate counsel. Therefore, as previously noted, since this failure is apparent from the record on appeal and was not raised on appeal by

different appellate counsel, this issue is procedurally barred on post-conviction review.

Marshall, through postconviction counsel who was neither his trial nor appellate counsel, perfected a timely appeal from the order of the district court denying postconviction relief. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Marshall assigns that the district court erred in denying him an evidentiary hearing on his motion for postconviction relief.

## STANDARD OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002).

■ Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004); *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003).

## ANALYSIS

We begin by addressing Marshall's argument that *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003), eliminates any procedural bar resulting from the failure of appellate counsel to raise claims of ineffective assistance of trial counsel on direct appeal. *Massaro* was a federal postconviction proceeding brought pursuant to 28 U.S.C. § 2255 (1994) in which the prisoner alleged ineffective assistance of trial counsel. A federal appeals court had affirmed the dismissal of the action on the ground of procedural default, due to the fact that Massaro was represented on direct appeal by new counsel who did not raise the issue of ineffective assistance of trial counsel. The Court acknowledged the general federal rule that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," noting that this "procedural-default

rule is neither a statutory nor a constitutional requirement," but, rather, "a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." 538 U.S. at 504. Resolving a conflict among the federal courts of appeals, the U.S. Supreme Court held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." 538 U.S. at 509.

█ The *Massaro* Court noted that a "growing majority" of state courts follow the rule adopted by its holding. 538 U.S. at 508. This court, however, has not adopted the rule. We do not interpret *Massaro* as requiring that we do so, inasmuch as the Court specifically acknowledged that procedural default rules are not constitutional requirements. The general procedural default rule we have long applied in postconviction proceedings under Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995) holds that a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Perry*, 268 Neb. 179, 681 N.W.2d 729 (2004); *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003). Thus, a motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred where a defendant was represented by a different attorney on direct appeal than at trial and the alleged deficiencies in trial counsel's performance were known or apparent from the record. *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002); *State v. Suggs*, 259 Neb. 733, 613 N.W.2d 8 (2000); *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). In this case, the district court correctly applied this principle in concluding that Marshall's claims of ineffective assistance of trial counsel were procedurally barred.

█ However, a claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Williams, supra.* As in *Williams*, this postconviction proceeding is Marshall's first opportunity to assert that his appellate counsel was ineffective in failing to raise certain claims of ineffective assistance of trial counsel. Such claims directed at the performance of appellate counsel are not procedurally barred.

■ The assignment of error in this appeal is very broad and nonspecific, asserting generally that the district court erred in denying Marshall an evidentiary hearing on his postconviction motion. Errors that are assigned but not argued will not be addressed by an appellate court. *State v. Perry, supra*; *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002). Although Marshall alleged in his motion for postconviction relief that his appellate counsel was ineffective in failing to raise multiple claimed performance deficiencies on the part of his trial counsel, the only specific shortcoming argued in this appeal is the failure of appellate counsel to assign on direct appeal that trial counsel was ineffective in not perfecting a timely appeal from the denial of the pleas in bar. Based upon *State v. Al-Zubaidy, supra*, and *State v. Williams, supra*, we conclude that this specific postconviction claim is not procedurally barred. Therefore, we must consider whether Marshall was entitled to an evidentiary hearing on this issue.

■ An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. When such an allegation is made, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief. *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004); *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003). In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Becerra*, 261 Neb. 596, 624 N.W.2d 21 (2001). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *State v. George*, 264 Neb. 26, 645 N.W.2d 777 (2002). Assessment of Marshall's postconviction claim regarding the performance of his appellate counsel necessarily

requires examination of the performance of his trial counsel, specifically, whether trial counsel rendered ineffective assistance in not appealing from the order denying the pleas in bar. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

In Marshall's direct appeal, we relied on our cases holding that "[a] ruling on a plea in bar is a final order as defined in Neb. Rev. Stat. § 25-1902 (Reissue 1995)." *State v. Marshall*, 253 Neb. 676, 681, 573 N.W.2d 406, 410 (1998), citing *State v. Trevino*, 251 Neb. 344, 556 N.W.2d 638 (1996); *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995). We subsequently held in *State v. Rubio*, 261 Neb. 475, 477, 623 N.W.2d 659, 661 (2001), that this rule applies only to the denial of a "true plea in bar," which we defined as one meeting the requirements of Neb. Rev. Stat. § 29-1817 (Reissue 1995). We need not consider whether the order denying Marshall's pleas in bar would be final under *Rubio*, because our holding on Marshall's direct appeal that the order was final for purposes of appeal constitutes the law of the case to which we adhere in this postconviction proceeding. See *Thomas v. State*, 268 Neb. 594, 685 N.W.2d 66 (2004). We therefore start from the premise that Marshall's trial counsel did not perfect a timely appeal from a final order denying his pleas in bar and that appellate counsel did not assert this as ineffective assistance of trial counsel on direct appeal.

Marshall argues that due to the failure to perfect an appeal, prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), and *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000). We reject this argument based upon the reasoning of *State v. Meers*, 267 Neb. 27, 671 N.W.2d 234 (2003). That case involved a postconviction claim that trial counsel was ineffective in failing to appeal from a pretrial order denying the defendant's motion for absolute discharge on speedy trial grounds. We distinguished this circumstance from *Trotter*, which applied the presumption of prejudice under *Cronic* to counsel's failure to comply with a defendant's direction to perfect a direct appeal *after* trial, conviction, and sentence. We reasoned in *Meers* that failure to appeal from the denial of a potentially dispositive pretrial motion did not amount to the complete denial of assistance of counsel at either the

pretrial, trial, or appellate stages of the criminal prosecution, but, rather, was analogous to those postconviction cases in which a convicted defendant claimed that trial counsel was ineffective in failing to preserve a specific issue for appellate review. We concluded that the claim should be fully adjudicated within the postconviction action utilizing the two-pronged *Strickland* standard for determining the effectiveness of counsel, focusing on "whether a timely appeal from the pretrial order denying absolute discharge would have resulted in a reversal and prevented a subsequent trial and conviction." *State v. Meers*, 267 Neb. at 32, 671 N.W.2d at 238.

We apply the same analytical approach to this case. The issue is whether a timely appeal from the order denying the pleas in bar would have resulted in a reversal which would have prevented Marshall's trial and conviction. Only if this question is resolved in the affirmative "could the failure to perfect the appeal be deemed prejudicial in the sense that it would have altered the result of the prosecution." *Id.* If there was no double jeopardy violation, Marshall could not have been prejudiced by the fact that his attorney did not file a timely appeal from the denial of the pleas in bar. See *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001). Because denial of a plea in bar involves a question of law, we are required to reach an independent conclusion on this issue. See, *State v. Winkler*, 266 Neb. 155, 663 N.W.2d 102 (2003); *State v. Isham*, 261 Neb. 690, 625 N.W.2d 511 (2001).

Marshall's pleas in bar asserted that continued prosecution after the mistrials subjected him to double jeopardy. The Fifth Amendment to the U.S. Constitution and article I, § 12, of the Nebraska Constitution protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364 (2001); *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000). The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution. *State v. Winkler, supra*; *State v. Nelson*, 262 Neb. 896, 636 N.W.2d 620 (2001). Under Neb. Const. art. I, § 12, in a case tried to a jury, jeopardy attaches when the jury is impaneled and sworn. *State v. Rhea, supra*; *State v. Bottolfson, supra*. However, the constitutional protection against double

jeopardy " 'does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' " *State v. Bostwick*, 222 Neb. 631, 642, 385 N.W.2d 906, 914 (1986), quoting *Wade v. Hunter*, 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949). Where jeopardy has attached in a prior criminal proceeding which does not result in final judgment and the State subsequently seeks to retry the defendant on the same charge, the constitutional protection against double jeopardy bars the retrial only if the prior proceeding terminated jeopardy. See *State v. Bostwick, supra.*

 Jeopardy attached in this case when the first jury was impaneled and sworn on January 30, 1996, but that proceeding did not result in a final judgment because a mistrial was granted over Marshall's objection. "[I]n cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). The issue in such cases is whether the mistrial terminated jeopardy and thus triggered the constitutional protection against double jeopardy as a bar to subsequent prosecution. See *State v. Bostwick, supra.* Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant. *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *State v. Bostwick, supra.*

This court has held that the test of manifest necessity is met when a mistrial is declared after discovery of potential juror bias during trial. *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979). See, also, *Quinton v. State*, 112 Neb. 684, 200 N.W. 881 (1924). Marshall argues, however, that the first mistrial was unnecessary because Neb. Rev. Stat. § 29-2004 (Reissue 1995) provides that "[i]f, before the final submission of the cause a regular juror dies or is discharged, the court shall order the alternate juror, if there is but one, to take his place in the jury box." The statute further provides that if there are two alternate jurors, "the court shall select one by lot" to replace the deceased or discharged regular juror. In support of his argument that such action is mandated, Marshall draws our attention to a footnote in

*Arizona v. Washington*, 434 U.S. at 512 n.31, which states that "if there is a suggestion of individual juror bias, it may be possible to replace that juror with an alternate." We read this footnote in the context of the Court's observation that a prosecutor's improper opening statement creates "a risk, often not present in the individual juror bias situation, that the entire panel may be tainted." *Arizona v. Washington*, 434 U.S. at 512. This statement followed the Court's discussion of its "consistent course of decision" that, in the case of possible juror bias, mistrial was justified even if not strictly necessary. *Id.*

While acknowledging that the record does not reflect why the trial court did not replace C.B. with an alternate, the State argues that the first mistrial could not have terminated jeopardy in any event because the jury selection process deprived Marshall of his right under Neb. Rev. Stat. § 29-2005 (Reissue 1995) to exercise 12 peremptory challenges and was, therefore, fundamentally flawed. The State's argument is based on the holding of *Illinois v. Somerville*, 410 U.S. at 460, that a mistrial is required by manifest necessity where a criminal trial is flawed by a defect which "could not be waived by the defendant's failure to object, and could be asserted on appeal or in a post-conviction proceeding to overturn a final judgment of conviction." Based upon *Ross v. Oklahoma*, 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988), and *Swain v. Alabama*, 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), *overruled, Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the State argues that the failure to afford Marshall the 12 peremptory challenges to which he was entitled under § 29-2005 constituted structural error affecting the framework within which the trial would have proceeded. See, *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); *State v. Lowe*, 267 Neb. 782, 677 N.W.2d 178 (2004). We agree.

Although peremptory challenges play a recognized role "in reinforcing a defendant's right to trial by an impartial jury," they are "not of federal constitutional dimension." *United States v. Martinez-Salazar*, 528 U.S. 304, 311, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000). With respect to a state criminal prosecution, "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of

their exercise." *Ross v. Oklahoma,* 487 U.S. at 89. "As such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.*

Nebraska law provides that "[e]very person arraigned for any crime punishable with death, or imprisonment for life, shall be admitted on his or her trial to a peremptory challenge of twelve jurors . . . ." § 29-2005. Marshall was charged, inter alia, with murder in the second degree, a Class IB felony carrying a maximum penalty of life imprisonment. Neb. Rev. Stat. §§ 28-105 (Reissue 1989) and 28-304 (Reissue 1995). Thus, under Nebraska law, Marshall was entitled to 12 peremptory challenges. The record reflects that during the jury selection that preceded the first mistrial, he received only six.

■ We recently held that the State's discriminatory exercise of its peremptory challenges in violation of *Batson v. Kentucky, supra,* constituted structural error. *State v. Lowe, supra.* It logically and necessarily follows that depriving Marshall of half of the peremptory challenges to which he is entitled under state law is likewise structural error. In this case, the trial judge did not articulate this error as a basis for granting the first mistrial. However, under *Arizona v. Washington,* 434 U.S. 497, 516-17, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978), if "the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective." Because the record at the time of the first mistrial reflected structural error which would have warranted reversal of any guilty verdict which may have resulted from continuation of the proceedings, the granting of the mistrial did not terminate jeopardy so as to bar retrial on the same charges.

Nor was jeopardy terminated by the second mistrial. Marshall's trial counsel did not object to the second mistrial and, in fact, argued that it was necessary. The record does not suggest, nor does Marshall argue on appeal, that he was goaded into agreement by any bad faith conduct on the part of the prosecution. Absent such bad faith, double jeopardy does not attach. *United States v. Dinitz,* 424 U.S. 600, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976); *State v. Kula,* 254 Neb. 962, 579 N.W.2d 541 (1998).

## CONCLUSION

██ Accordingly, we conclude as a matter of law that because neither of the mistrials terminated jeopardy, Marshall's pleas in bar were without merit. Thus, trial counsel's failure to perfect a timely appeal did not subject Marshall to prejudice under the second prong of the *Strickland* test. Likewise, appellate counsel's failure to raise the issue of trial counsel's performance in this regard on direct appeal was not prejudicial. As these legal conclusions are apparent from the files and records of the case, the district court did not err in dismissing Marshall's motion for postconviction relief without conducting an evidentiary hearing. We acknowledge that our reasoning differs from that of the district court. However, where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. *State v. Gamez-Lira*, 264 Neb. 96, 645 N.W.2d 562 (2002).

AFFIRMED.