STATE OF NEBRASKA, APPELLEE, V.
DEAN R. MINER, APPELLANT.
733 N.W.2d 891

Filed June 29, 2007.    No. S-06-187.

Ronald E. Temple, of Fitzgerald, Vetter & Temple, for appellant.

Jon Bruning, Attorney General, Kimberly A. Klein, and Stacy Foust, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Following a bench trial, Dean R. Miner was convicted in the district court for Holt County of theft by unlawful taking of 62 steers belonging to Wynn Hipke from the Atkinson Livestock Market. His conviction and sentence were affirmed on appeal.[1] In this postconviction proceeding, Miner contends that he was denied effective assistance of counsel. Specifically, he alleges that his trial counsel failed to file a plea in bar to assert a double jeopardy defense, based on a prior conviction in Nance County for theft by receiving some of the same cattle. The district court denied Miner's motion for postconviction relief, reasoning that a plea in bar would have had no merit because there was no

---

[1] *State v. Miner*, 2004 WL 1091996, No. A-02-933 (Neb. App. May 18, 2004) (not designated for permanent publication).

double jeopardy violation. On appeal from that order, we conclude that Miner's double jeopardy defense would have been meritorious if timely raised and that he is entitled to postconviction relief because of his trial counsel's failure to assert his constitutional right not to be placed in jeopardy twice for the same offense.

## BACKGROUND

On March 19, 2001, Hipke consigned cattle including 66 steers to the Atkinson Livestock Market in Holt County. The following morning, market employees discovered that 62 of the Hipke steers were missing. An investigation by a State official determined that some of the Hipke steers had been sold through a livestock market in Boone County. The remaining steers were sold through a livestock market in Nance County. The evidence showed that all of the steers recovered had purple ear tags with "D.R. Miner" printed on them. All except one steer had the Miner brand placed over the top of the Hipke brand. Separate criminal charges were filed against Miner in the district courts for Nance and Holt Counties.

### NANCE COUNTY PROSECUTION

Miner was charged in Nance County with theft by receiving stolen property in violation of Neb. Rev. Stat. § 28-517 (Reissue 1995), a Class III felony. In an amended information filed March 22, 2002, the State alleged that on March 23, 2001, in Nance County, Miner received, retained, or disposed of stolen movable property consisting of "26 head of black and black white-faced steers from the Atkinson Livestock Market." The State further alleged that Miner knew or believed that the steers had been stolen and that they had a value of over $1,500. Miner was also charged with one count of disposing of livestock without evidence of ownership in violation of Neb. Rev. Stat. § 54-1,123 (Reissue 2004), a Class III felony. On March 25, a jury found him guilty on both counts. On June 7, he received concurrent sentences of not less than 3 and not more than 6 years' imprisonment. The convictions and sentences were summarily affirmed by this court.[2]

---

[2] See *State v. Miner*, 265 Neb. xxi (No. S-02-666, Jan. 3, 2003).

HOLT COUNTY PROSECUTION

In June 2001, Miner was charged in Holt County with theft by unlawful taking in violation of Neb. Rev. Stat. § 28-511 (Reissue 1995), a Class III felony. The information specifically alleged that on or about March 20, 2001, in Holt County, Miner did "take or exercise control over movable property of another with the intent to deprive him or her thereof, to-wit: 62 black and black baldy steers belonging to Wynn Hipke, from the Atkinson Livestock Market, said property having a value of more than $ 1,500.00." Following a bench trial at which he was represented by counsel, the court found Miner guilty of the charged offense. On July 22, 2002, he was fined $5,000 and sentenced to 60 to 120 months' imprisonment, to be served consecutively to any other existing sentence.

Miner perfected a direct appeal pro se, but he was subsequently represented in the appeal by an attorney who did not represent him at trial. His claims on appeal included an assertion that the district court erred in imposing a consecutive sentence instead of a concurrent sentence and a claim that his trial counsel was ineffective for failing to file a plea in bar. Regarding sentencing, Miner argued that the presentence investigation report showed that he had previously been convicted and sentenced in Nance County for theft of some of the same steers. The Court of Appeals rejected this argument, noting that

> although the presentence investigation report contains both a letter from defense counsel and other information indicating that Miner was convicted and sentenced in Nance County for theft by receiving stolen property and disposing of livestock without evidence of ownership, the report does not show that these convictions involved the same cattle as the case at bar.[3]

The Court of Appeals further determined that the evidence was "insufficient to establish that Miner was convicted and sentenced in Nance County as he claims."[4] The court also determined that the record was insufficient to adequately review Miner's claim

---

[3] *State v. Miner, supra* note 1, 2004 WL 1091996 at *5.

[4] *Id.*

of ineffective assistance of trial counsel, and accordingly did not reach that issue. It affirmed Miner's conviction and sentence.

## POSTCONVICTION PROCEEDING

Miner then initiated this action for postconviction relief. He is represented by the same attorney who represented him on direct appeal. He alleged that his trial counsel was ineffective for failing to file a plea in bar to the charges and failing "to offer evidence or remarks to the Court, at the time of sentencing, reflecting that the defendant had been sentenced in another county for charges relating to the same cattle upon which he was charged and sentenced in Holt County." He prayed for an order dismissing the charges or for a new sentencing hearing.

An evidentiary hearing was held on the postconviction motion. The district court received evidence consisting of the record from the Holt County prosecution and appeal, portions of the record from the Nance County prosecution, and the deposition of Miner's trial counsel in the Holt County prosecution. The State offered no evidence.

Subsequently, the district court entered an order denying Miner's motion for postconviction relief. The court noted that the State had conceded in its brief that "the 26 head for which the defendant was convicted of receiving in Nance County were part of the 62 head the defendant was convicted of taking in Holt County and the evidence adduced at the hearing on the defendant's motion indicates the same." However, it concluded that these facts did not subject Miner to double jeopardy in the Holt County case, reasoning:

> In this case the defendant was convicted of taking 62 steers in Holt County having a value of $39,501.60 . . . and receiving 26 steers in Nance County having a value of $16,427.37. . . . The defendant was convicted of taking an additional 36 steers in Holt County. This distinction was recognized by defendant's trial counsel. . . . Because the Holt County case required proof of the taking of an additional 36 head of steers with a value in excess of $1,500 that the Nance County case did not, the court finds that any plea in bar filed on that basis would not have been sustained. There was no double jeopardy violation regarding the additional 36 head of steers taken in Holt County.

Trial counsel's failure to file a plea in bar did not subject the defendant to any prejudice under the second prong of the *Strickland* [*v. Washington*[5]] test.

The district court also rejected Miner's sentencing claim, noting the record showed that the court was aware of the Nance County conviction at the time of sentencing on the Holt County conviction.

Miner perfected this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[6]

## ASSIGNMENTS OF ERROR

Miner assigns, restated, that the district court erred in rejecting his claims that (1) his trial counsel was ineffective for failing to file a plea in bar asserting double jeopardy and (2) his trial counsel was ineffective for failing to offer evidence of Miner's conviction and sentence in Nance County at the time of his sentencing in Holt County.

## STANDARD OF REVIEW

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[7] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[8] an appellate court reviews such legal determinations independently of the lower court's decision.[9]

## ANALYSIS

■ The Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995), is available to a defendant to show that his or her conviction was obtained in violation

---

[5] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[6] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

[7] *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006).

[8] *Strickland v. Washington, supra* note 5.

[9] *State v. Sims, supra* note 7; *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

of his or her constitutional rights.[10] A defendant has the right under U.S. Const. amends. VI and XIV, and Neb. Const. art. I, § 11, to be represented by an attorney in all critical stages of a criminal prosecution.[11] An ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[12] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[13] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[14] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[15]

■ In this case, the district court focused on the second prong of the test and concluded that the alleged performance deficiency of Miner's trial counsel did not result in prejudice. Specifically, the district court determined that counsel's failure to file a plea in bar had no adverse consequence because the convictions in Nance and Holt Counties did not subject Miner to double jeopardy. We begin our analysis with this issue, because where a defendant is unable to demonstrate sufficient prejudice in establishing a claim for ineffectiveness of counsel, no examination of whether counsel's performance was deficient is necessary.[16]

### PREJUDICE: DOUBLE JEOPARDY

■ The prejudice component of the ineffective assistance of counsel test focuses on whether counsel's performance rendered

---

[10] *State v. Marshall*, 272 Neb. 924, 725 N.W.2d 834 (2007); *State v. McDermott*, 267 Neb. 761, 677 N.W.2d 156 (2004).

[11] *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001).

[12] See *Strickland v. Washington, supra* note 5.

[13] *State v. Barnes*, 272 Neb. 749, 724 N.W.2d 807 (2006).

[14] *Id.*

[15] *Id.*

[16] *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005).

the results of the proceeding unreliable or fundamentally unfair by depriving a defendant of a substantive or procedural right.[17] To prove prejudice for a claim of ineffective assistance of counsel, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[18] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[19]

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[20] The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution.[21] A defendant may raise a double jeopardy claim by filing a plea in bar.[22]

We agree with the reasoning of the district court that trial counsel's failure to file a plea in bar could have prejudiced Miner only if there had been a meritorious double jeopardy defense. In order to address that issue, we must decide whether the prosecutions in Nance and Holt Counties were for the same offense.

One of Miner's convictions in Nance County was for theft by receiving stolen property, which is committed when a person "receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed

---

[17] *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999).

[18] *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006); *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006).

[19] *Id.*

[20] *State v. Molina, supra* note 9; *State v. Winkler*, 266 Neb. 155, 663 N.W.2d 102 (2003).

[21] *State v. Molina, supra* note 9; *State v. Winkler, supra* note 20. See Neb. Const. art. I, § 12.

[22] See, Neb. Rev. Stat. § 29-1817 (Reissue 1995); *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990).

with intention to restore it to the owner."[23] In Holt County, Miner was convicted of theft by unlawful taking, which is committed when a person "takes, or exercises control over, movable property of another with the intent to deprive him or her thereof."[24] Although the two offenses are codified separately, §§ 28-511 and 28-517 must be read in conjunction with Neb. Rev. Stat. § 28-510 (Reissue 1995), which provides:

> Conduct denominated theft in sections 28-509 to 28-518 constitutes a single offense embracing the separated offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under sections 28-509 to 28-518, notwithstanding the specification of a different manner in the indictment or information, subject only to the power of the court to [e]nsure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

In *State v. Jonusas*,[25] we observed that § 28-510 mirrored A.L.I., Model Penal Code and Commentaries § 223.1(1) (1980). We wrote:

> In effect, § 28-510 has subsumed various forms of unlawful acquisitive behavior into a single offense of theft which may be committed by taking part in any one of several activities described in §§ 28-509 to 28-517. The unifying concept in all these crimes is that each involves the involuntary transfer of property. In each case, the actor appropriates the property of the victim without his or her consent or with a consent that was obtained by fraud or coercion.[26]

---

[23] § 28-517.

[24] § 28-511(1).

[25] *State v. Jonusas*, 269 Neb. 644, 694 N.W.2d 651 (2005).

[26] *Id.* at 649, 694 N.W.2d at 656 (citing A.L.I., Model Penal Code and Commentaries § 223.1, comment 2 (1980)).

The authors of the Model Penal Code note that consolidation of theft offenses "reduces the opportunity for technical defenses based upon legal distinctions between the closely related activities of stealing and receiving."[27]

> One who is found in possession of stolen goods may be either the thief or the receiver. If the prosecution can prove the requisite state of mind to deprive the true owner of the property, it makes little difference whether the jury infers that the defendant took directly from the owner or acquired the goods from another person who committed the act of taking.[28]

However, "[c]onsolidation also has a consequence favorable to the defense by precluding conviction of both offenses for the same transaction."[29] Other courts in jurisdictions having consolidated theft statutes derived from the Model Penal Code have held that a defendant cannot be convicted of theft by taking and theft by receiving the same property.[30] Because the Legislature has unambiguously defined theft as a single offense which can be committed in several different ways, we do not employ the double jeopardy analysis established by *Blockburger v. United States*.[31]

In this case, the district court distinguished Miner's two theft convictions by concluding that they did not involve the same property. The court reasoned that although the same 26 head of cattle were involved in each case, the Holt County case involved an additional 36 head which were not the subject of the Nance County prosecution. The court concluded that there was "no double jeopardy violation regarding the additional 36

[27] Model Penal Code and Commentaries, *supra* note 26, § 223.6, comment 1 at 232.

[28] *Id.* at 232-34.

[29] *Id.* at 234.

[30] See, *People v. Palisoc*, 2002 Guam 9 (2002); *Gibson v. State*, 643 N.E.2d 885 (Ind. 1994); *State v. Esslinger*, 357 N.W.2d 525 (S.D. 1984), *overruled on other grounds, State v. LaPlante*, 650 N.W.2d 305 (S.D. 2002).

[31] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932). See *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998).

head of steers taken in Holt County." In effect, the district court treated the Holt County conviction as being based on 36 head and the Nance County conviction as being based on the remaining 26 head, thus constituting two separate offenses.

■ This reasoning is contrary to Neb. Rev. Stat. § 28-518 (Reissue 1995), which provides that theft may be classified as a Class III or IV felony or a Class I or II misdemeanor, depending on the value of the stolen property. However, § 28-518(7) adds: "Amounts taken pursuant to one scheme or course of conduct from one person may be aggregated in the indictment or information in determining the classification of the offense, *except that amounts may not be aggregated into more than one offense.*" (Emphasis supplied.) Similarly, this court has held that an act of theft involving multiple items of property stolen simultaneously at the same place constitutes one offense, in which the value of the individual stolen items may be considered collectively for the aggregate or total value of the property stolen to determine the grade of the theft offense under § 28-518.[32]

The record reflects that 62 head of cattle were taken pursuant to "one scheme or course of conduct from one person" on the same day. Accordingly, § 28-518(7) permits the value of all items of property, in this case steers, to be aggregated in order to determine the classification of the theft offense. However, the same statute specifically prohibits aggregation of individual values "into more than one offense." Thus, Miner could not have been charged with one count of theft involving 26 head and a second count involving the remaining 36 head. For that reason, the district court erred in treating the two convictions as involving separate lots of cattle and therefore separate offenses for purposes of double jeopardy.

■ In a case tried to a jury, jeopardy attaches when the jury is impaneled and sworn.[33] Although the record before us does not reflect the precise date on which the jury in the Nance

---

[32] *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992).

[33] *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005); *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000).

County prosecution was sworn, we can reasonably infer that it was prior to March 25, 2002, when the jury, having been "duly impanelled and sworn," returned its guilty verdict on the charge of theft. Trial in the Holt County prosecution began on April 30. A meritorious plea in bar could have been filed after jeopardy had attached in the Nance County case and before the commencement of trial in Holt County.

## PERFORMANCE OF TRIAL COUNSEL

In order to demonstrate that his or her counsel's performance was deficient in support of a claim for ineffective assistance of counsel, a defendant must show that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area.[34] In determining whether a trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably.[35] An appellate court gives due deference to defense counsel's discretion in formulating trial tactics.[36]

Miner's trial counsel represented him only in the Holt County prosecution. However, he was aware of the Nance County conviction and understood that it involved some, but not all, of the cattle which had been stolen in Holt County. His primary strategy was to defend on the basis that the State's circumstantial evidence was insufficient to connect Miner to the "actual taking" in Holt County. He did not file a plea in bar or research the double jeopardy issue, and he had no discussions with Miner on that subject.

At the time of his defense of Miner in 2002, counsel was charged with knowledge of the legal principles with respect to consolidation of theft offenses in Nebraska.[37] Counsel's belief that the State's evidence may have been insufficient to obtain a conviction did not preclude a pretrial filing of a plea in bar to assert the double jeopardy issue in the trial court and, if

[34] *State v. Moyer, supra* note 18.

[35] *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

[36] *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003).

[37] See, §§ 28-510 to 28-518; *State v. Garza, supra* note 32.

unsuccessful there, in an immediate appeal.[38] We conclude that trial counsel's failure to file a plea in bar constituted deficient performance under the *Strickland* standard which was prejudicial to Miner because it deprived him of a meritorious double jeopardy defense.

## CONCLUSION

Having established both prongs of the *Strickland* standard, Miner has shown that he received ineffective assistance of trial counsel in violation of his rights secured by the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution which rendered the judgment of conviction void or voidable. Because of the nature of this violation, Miner was deprived of his federal and state constitutional rights not to be placed in jeopardy twice for the same offense. Accordingly, we reverse the judgment of the district court and remand the cause with directions to set aside the judgment of conviction in Holt County and discharge Miner from the sentence imposed in this cause.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[38] See *State v. Rubio*, 261 Neb. 475, 623 N.W.2d 659 (2001) (holding that plea in bar filed in accordance with statutory requirements is final, appealable order).