**Robert C. HENSLEY, Plaintiff,**

v.

**ALCON LABORATORIES, INC.,
a foreign corporation,
Defendant.**

No. 3:99–0458.

United States District Court,
S.D. West Virginia,
Huntington Division.

April 23, 2002.

Sherri D. Goodman, Goodman Advocacy, Charleston, WV, for Plaintiff.

Michael D. Foster, Charles M. Surber, Jr., Erin Magee Condaras, Jackson & Kelly, Charleston, WV, for Defendants.

## ORDER

GOODWIN, District Judge.

Now pending is defendant Alcon Laboratories, Inc.'s motion for leave to subpoena the Honorable Robert C. Chambers. For reasons discussed below, the motion is **DENIED**.

### I. Background

This case is before the court on remand from the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit's opinion contains a full recitation of the facts of this case. *See Hensley v. Alcon Labs., Inc.*, 277 F.3d 535 (4th Cir. 2002). The court will review here those facts relevant to this motion.

Robert Hensley brought a wrongful termination case in state court against Alcon Laboratories, Inc. (Alcon), and Alcon removed the case to federal court. The case was assigned to Judge Chambers, who held an off-the-record settlement conference in the matter on May 17, 2000. Hensley, Hensley's attorney, and Alcon's attorney attended the conference and allegedly agreed to settle the case for $9,000. Pursuant to this agreement, the court issued an order removing the case from the active docket and giving the parties 30 days to submit an agreed-upon order of dismissal.

After the settlement conference, Hensley became concerned about clauses in the settlement agreement proposed by Alcon and refused to sign it. Alcon filed a motion to enforce the settlement agreement, or in the alternative, for summary judgment. Subsequent affidavits exchanged by the parties reflected disagreement about what had happened at the settlement conference. The court granted Alcon's motion to enforce the settlement agreement and ordered Hensley to consummate the settlement agreement before September 15, 2000. Hensley continued to express reservations about the agreement. The district court held an off-the-record hearing on October 4, 2000, attended by Alcon's lawyer, Hensley, and Hensley's former lawyer who represented him during the settlement conference. The court then entered an order dismissing Hensley's claims with prejudice and assessing reasonable attorney's fees and expenses.

On appeal from the judgment dismissing the case, the Fourth Circuit found that the court should have conducted a plenary hearing to determine whether a settlement agreement was reached, and if so, its terms and conditions. It remanded the case to another district judge to conduct the plenary hearing. The matter is now before this court.

### II. Discussion

■ The legitimacy of courts depends entirely upon the public perception that they are principled and neutral. Acts that threaten this perception impair the legitimacy of courts and erode the law as such. Because the court finds that subpoenaing Judge Chambers to testify regarding his observations while acting in his official capacity would impair the public perception of a neutral judiciary, and because Alcon has not demonstrated an extraordinary need to counterbalance that public interest, the court denies Alcon's motion.

The public generally perceives that our judicial process guarantees fairness. Citizens place great trust in their lawyers and expect impartial judges to decide cases without favoritism. The public also trusts our adjudicatory system to apply the law fairly, free of manipulation by the participants in a dispute. This trust in the legal

process withstands challenges to the judicial institution only when courts provide rational explanations for their decisions, and when the public believes that such explanations are based on neutral and informed principles.

It is the people's practiced regard for judicial process that makes them amenable to a judge's decision in a particular case. Indeed, we enjoy an orderly society because of the long tradition of maintaining peace through the judicial process. Citizens comply with the rulings of courts as a matter of course, and assume that resistance to a valid court order is unacceptable behavior. *See* Stephen G. Breyer, *Judicial Independence in the United States,* 40 St. Louis U.L.J. 989, 996 (1996). The public's belief in an impartial judiciary acting without favor or fervor for a cause other than the faithful administration of the law sustains this tradition. That is, the legitimacy of the courts depends on judges acting in accordance with the public's expectations of principled and neutral arbiters.

The procedures that engender acceptance of and respect for judicial decision-making constrain the ways in which a judge interacts with the public. *See Code of Conduct for United States Judges* (1999). Whether or not a judge is wearing his official robe, he is always a judge, and thus his actions must promote public confidence and trust in the judiciary.

■ The law also restricts the way others interact with judges. Judges are absolutely immune from liability for acts which are judicial in nature and that fall within, or even in excess of, their jurisdiction. *Bradley v. Fisher,* 80 U.S. 335, 357, 13 Wall. 335, 20 L.Ed. 646 (1871). The proper administration of justice depends on judges' ability to act freely on their own convictions without apprehension of personal consequences. *See id.* at 349–50, 80 U.S. 335. Immunity prevents judges from dealing with vexatious suits brought by disgruntled litigants, and from being forced to keep unnecessarily meticulous records for fear of future litigation. *Id.* at 349, 13 Wall. 335. Judicial immunity protects the finality of decisions. *Id.* Moreover, parties' rights are adequately safeguarded through the legal remedy of correction on appeal. *Id.*

■ The rationale for granting absolute judicial immunity from suit also requires a qualified immunity from other legal process. Absent a showing of extraordinary need, a judge may not be compelled to testify about matters observed as the consequence of the performance of his official duties. This protection allows judges to vigorously perform their duties without fear of later having to provide explanatory or observational testimony.

■ A judge facilitating settlement negotiations either on or off the record is performing an official duty. Where a judge's act is a function normally performed by a judge, and where the parties believe the judge is acting officially, the act is an official duty. *See Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Rule 16, which encourages active judges, promotes the performance of this duty. *See Fed.R.Civ.P.* 16 advisory committee's note intro. Unlike the former, passive model of the judiciary, in which judges spoke only for and on the record, modern judges manage an ever-burgeoning case load through active engagement and management of individual cases. *See* Charles R. Richey, *Rule 16 Revisited: Reflections for the Benefit of Bench & Bar,* 139 F.R.D. 525, 527 (1991). This participation in cases is no less official for its informality. Moreover, parties at a settlement conference look to the judge in his capacity as the judge. Therefore, absent exceptional circumstances, a judge's recollection of the events which occur dur-

ing such negotiations may not be the subject of inquiry by another court.

Here, Alcon has not made a showing of extraordinary need. It seeks Judge Chambers's testimony only as corroboration of other witnesses to the settlement conference. Alcon's need for an additional fact-witness is outweighed by the public's interest in an independent and involved judiciary. The court **DENIES** Alcon's motion.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, the Honorable Robert C. Chambers, and any unrepresented party, and to publish the same on the court's web site at www.wvsd.uscourts.gov.