580 S.E.2d 447

Ex parte Charles W. WHETSTONE, Jr., Appellant,

In re Thomas IVEY, Applicant/Respondent,

v.

William D. CATOE, Director, South Carolina Department of Corrections, Respondent.

No. 25641.

Supreme Court of South Carolina.

Heard March 5, 2003.

Decided April 28, 2003.

Rehearing Denied May 29, 2003.

Deputy Attorney General Treva G. Ashworth; Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for Appellant.

Assistant Deputy Attorney General Donald J. Zelenka, of Columbia, for Respondent William D. Catoe, Director, South Carolina Department of Corrections.

H. Wayne Floyd, of West Columbia, and Melissa Jane Reed Kimbrough, of Columbia, for Respondent Thomas Ivey.

Justice BURNETT:

Charles W. Whetstone, Jr., ("Whetstone"), a former circuit court judge, brings this action in our original jurisdiction through a common law writ of certiorari to quash a subpoena requiring him to testify in a Post Conviction Relief ("PCR") hearing for Thomas Ivey ("Ivey"). We reverse.

## FACTS

Ivey filed a PCR petition alleging, *inter alia*, his trial counsel, Michael Culler ("Culler"), provided ineffective assistance of counsel. Ivey alleges Culler had a conflict of interest because of his friendship with Officer Thomas Harrison ("Officer Harrison"), a man for whose murder Ivey was convicted in an earlier trial.[1]

---

1. The facts of the underlying criminal cases involved Ivey and an accomplice who escaped from an Alabama prison in January 1993. The two traveled to Columbia, South Carolina, where they kidnapped and eventually murdered Robert Montgomery ("Montgomery"). Later the two, joined by Patricia Perkins, purchased goods using forged checks in the name of Montgomery. Suspicious of the trio, a store employee contacted the police.

 The police stopped the three in a mall parking lot to question them about the checks. As Officer Harrison questioned Ivey, Ivey's pistol discharged. The ricocheted bullet struck Officer Harrison. Ivey proceeded to shoot Officer Harrison five more times.

 Ivey was convicted for the murder of Officer Harrison. He was sentenced to death. *See State v. Ivey*, 325 S.C. 137, 481 S.E.2d 125 (1997) (*Ivey* I). Ivey was also convicted of the murder, kidnapping, and armed robbery of Montgomery in a trial conducted by Judge Whetstone. *See State v. Ivey*, 331 S.C. 118, 502 S.E.2d 92 (1998) (*Ivey* II). Culler represented Ivey in *Ivey* II only. Ivey was again sentenced to death in *Ivey* II. The Officer Harrison murder conviction was an aggravating circumstance in the sentencing phase of *Ivey* II.

Buttressing Ivey's claim is a letter signed by Culler stating he could not represent Patricia Perkins ("Perkins"), an individual tangentially involved in the murder of Officer Harrison, because he was a friend of the slain officer. Culler does not deny signing the letter, but stated he was not aware why he did so because he only casually knew Officer Harrison, and would not consider him a close friend.

The PCR judge denied Whetstone's Motion to Quash the Subpoena. The PCR judge's order allowed Ivey to question Whetstone on two grounds: 1) whether he ever had a conversation with Culler discussing his association with Officer Harrison; and 2) whether he ever saw the Perkins' letter in which Culler asked to be relieved as counsel in the related case. The order specifically precluded Ivey's asking Whetstone what he might have done had he known of a potential conflict of interest.

## ISSUE

Did the PCR court err in allowing the questioning of a former circuit court judge who presided over the applicant's trial?

## DISCUSSION

 It is not disputed that a judge may testify on matters not touching upon his official duties. At issue is the extent to which a judge may be required to testify about a case over which he previously presided.

The South Carolina Code of Judicial Conduct provides little guidance by confining its directives only against judges serving as character witnesses. *See* Rule 501, Canon 2(B) cmt., SCACR. Our search of relevant South Carolina case law has produced only *State v. Talbert*, 41 S.C. 526, 19 S.E. 852 (1894).

In *Talbert*, the defense sought a judge's testimony concerning an arrest warrant issued against the defendant. The State's objection was sustained at trial.

The issue on appeal was whether the trial court should allow a judge to testify as a witness concerning actions taken in his official capacity. This Court affirmed, reasoning the defendant's position was "clearly untenable" because the warrant

itself was the best evidence of the fact sought to be proved, not the testimony of the judge. The Court further found the judge's testimony irrelevant.[2]

This reasoning is echoed by the modern trend of courts not allowing a judge to testify regarding a case in which he previously presided unless the testimony is: 1) critical; and 2) can be obtained by no other means. *See United States v. Dowdy*, 440 F.Supp. 894 (W.D.Va.1977); *Commonwealth v. Ellis*, 10 Mass. L. Rptr. 333 (Mass.1999) *available at* 1999 WL 855196; *State ex rel. Carroll v. Junker*, 79 Wash.2d 12, 482 P.2d 775 (Wash.1971); *Helmbrecht v. St. Paul Ins. Co.*, 117 Wis.2d 74, 343 N.W.2d 132 (Wis.Ct.App.1983); *see generally* Michael D. Wade, "The Judge as a Witness," Mich. B.J. 906 (1995) (providing six reasons why courts traditionally do not allow a judge to testify regarding a case in which he previously presided).

Ivey contends Whetstone's testimony is critical in determining whether Culler provided ineffective assistance of counsel due to a conflict of interest. The PCR court agreed and found the judge's testimony "relevant as to the limited issues of whether [Whetstone] had been informed about any association of Mr. Culler with Officer Harrison by means of communication from Mr. Culler, by being shown [the Perkins' letter asking to be relieved], by Mr. Whetstone's seeing anything regarding such matters in the clerk's file, or from other sources."

Ivey's argument and the PCR court's order, however, fail to address why Whetstone's testimony is critical to assist the court in determining whether Culler provided ineffective assistance of counsel. Ivey asserts Whetstone's knowledge of a possible conflict of interest is relevant because, under *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), Ivey "must prove that the judge had an affirmative duty to inquire into the conflict disclosed by Mr. Culler in his signed letter filed with the Clark [sic] of Court in the Patricia Perkins file." Ivey concludes "if Mr. Whetstone had personal

---

**2.** The defense asserted, if called to testify, the judge would testify he signed a warrant for the arrest of another individual, not Talbert. The defense's theory was the other individual committed the crime, and the judge's opinion the other individual was the guilty party would support Talbert's claim.

knowledge of the letter, then he should have made inquiry under *Holloway v. Arkansas."* We disagree.

*Holloway* is inapplicable to the facts of this case. *Holloway* focused on the responsibility of a trial court to resolve a potential conflict of interest of an attorney representing multiple co-defendants. *Holloway* does not stand for a per se rule that a trial court must *sua sponte* inquire into whether trial counsel has a conflict of interest as Ivey seems to suggests. *See also Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (a trial court must inquire into potential conflicts of interest **in multiple representation situations** where "the trial court knows or reasonably should know that a particular conflict exists." 446 U.S. at 347, 100 S.Ct. 1708).

Further, Ivey's claim of ineffective assistance of counsel is founded upon the actions, or more properly the inaction, of Culler. Ivey argues Culler's failure to recuse himself from the case or his failure to notify Ivey of any potential conflict establishes an ineffective assistance claim. Ivey's claim, therefore, rests on allegations of improper actions by defense counsel not on the actions or failures of the trial judge.

There is no critical, relevant reason to require Whetstone's testimony regarding whether he discussed possible conflicts of interests with Culler or whether he became aware of possible conflicts of interests by reviewing the Perkins' letter. Culler does not deny he wrote the letter regarding the Perkins' case or was subsequently excused from representing her. Culler does not deny that he did not inform Ivey of the letter. Culler now, however, denies that he had any type of relationship with Officer Harrison other than a passing acquaintance.

No relevant need for Whetstone's testimony overcomes the presumption judges should not be called to testify regarding matters from a case over which they previously presided. Further, Whetstone need not be called to testify about the existence of a conversation with Culler, when an alternate means of obtaining such information may be found in the testimony of Culler himself. The trial record and PCR testimony of the witnesses provide ample resources from which Ivey's claims may be reviewed.

### Conclusion

For the above cited reasons, we quash the subpoena.

MOORE, A.C.J., WALLER and PLEICONES, JJ., concur.