STATE OF NEBRASKA, APPELLEE, V.
MICHAEL J. SIMS, APPELLANT. .
725 N.W.2d 175

Filed December 22, 2006. No. S-06-249.

812

Jason E. Troia and Jill Daley, of Gallup & Schaefer, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## I. NATURE OF CASE

This is an appeal from the denial, after an evidentiary hearing, of Michael J. Sims' motion for postconviction relief to set aside his 1998 convictions for first degree murder, attempted first degree murder, and two counts of use of a deadly weapon to commit a felony. Sims alleged that he was denied his right to effective assistance of counsel because trial counsel failed to file a motion for discharge asserting Sims' right to a speedy trial. Sims also alleged that trial counsel was ineffective in failing to object to the impermissible impeachment of his trial testimony by reference to his postarrest, post-*Miranda* silence, in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). Sims asserts that the postconviction judge, who was also the trial judge, erred in denying his plea for postconviction relief and also erred by refusing to recuse himself in order to testify concerning the scheduling of Sims' trial for speedy trial purposes.

The postconviction court was not clearly erroneous in finding the delay beyond the 6-month statutory period attributable to trial counsel's motion to continue, and we find no violation of Sims' right to a speedy trial. We accordingly affirm the postconviction court's conclusion that Sims' trial counsel was not ineffective for failing to file a motion for discharge. Because Sims failed to show a threshold level of necessity for the postconviction judge's testimony, the judge did not abuse his discretion in refusing to recuse himself. We do not address the *Doyle* issue because it has not been preserved for appellate review.

## II. BACKGROUND

Sims' trial was held on August 24 through September 1, 1998. The evidence presented at trial is fully set forth in *State v. Sims,*

258 Neb. 357, 603 N.W.2d 431 (1999). For purposes of Sims' ineffective assistance of counsel claims, we reiterate some of the procedural history, as developed by evidence presented at the postconviction hearing.

## 1. PROCEDURAL HISTORY

The four-count information charging Sims with the offenses for which he was convicted was filed on May 7, 1997. On May 8, Sims appeared for arraignment with appointed counsel and entered a plea of not guilty subject to a plea in abatement, which he was given leave to file within 10 days. Sims' appointed counsel moved for leave to withdraw on September 18. On September 26, the court granted the motion but, noting that Sims had elected to represent himself, required the attorney to remain as Sims' technical advisor. The court overruled Sims' plea in abatement on October 8.

Sims filed a pro se "Motion on Conflicts and Negligence of Stand by Counsel and Courts" on October 29, 1997. A hearing on this motion was held on November 4, and the matter was continued until November 10. On November 10, Sims indicated that he was interviewing attorneys in order to retain one and the court ordered that the original attorney remain as Sims' advisor until Sims secured new counsel. On December 10, another attorney entered his appearance for Sims and the originally appointed counsel was allowed to withdraw.

At a pretrial conference held on January 28, 1998, the court scheduled trial to begin on April 6. On April 6, however, the State was granted leave to endorse three additional witnesses. Sims filed a motion for continuance, which was granted, and the trial court indicated that Sims' trial would commence on May 12.

On approximately May 11, 1998, codefendant Harry Winefeldt entered into a plea agreement with the State and agreed to testify against Sims. Trial counsel, in a deposition entered into evidence at the postconviction hearing, testified as follows:

> I have a vague recollection about asking for a continuation when the State's co-defendant entered a plea and agreed to testify for the State. Do I have a specific recollection as to a particular date, I don't. I — I vaguely recall the co-defendant getting on board with the State and at that point needing more time to prepare the defense.

Trial counsel explained that upon learning that Winefeldt was going to testify against Sims, trial counsel "would not have been prepared to go forward." He would have needed more time to prepare to cross-examine Winefeldt.

Trial counsel explained that it was his recollection that Sims' trial was then rescheduled to August 24, 1998, after he and the trial judge looked at the dates and "either I was on vacation or the Judge was gone." Trial counsel explained that the "August date was the earliest we could get in for various reasons." Trial counsel further testified that he remembered speaking with Sims about the August 24 date and that Sims did not have a problem with it. Trial counsel said that Sims was always "on top of things," and trial counsel was sure that he had spoken with Sims about his right to a speedy trial.

The prosecutor for Sims' trial likewise recalled that it was Sims' trial counsel who had requested a continuance when trial counsel learned that Winefeldt had accepted a plea agreement on "the eve of trial for . . . Sims." The prosecutor explained, "I think . . . the reason the trial was moved from May to August [was] because I believe [trial counsel] said, well, if [Winefeldt is] going to testify, then I'm going to need a continuance because I have no idea what he's going to say."

Sims testified at the postconviction hearing that he had always emphasized to trial counsel that he wanted to go to trial as soon as possible. Sims said he had expected to go to trial on May 12, 1998, and that trial counsel was prepared for trial on that date. Sims asserted that trial counsel never told Sims why his trial date was moved and that when he specifically asked trial counsel for the reason for the delay, trial counsel told him that he did not know. Although Sims' testimony is not entirely clear, Sims admitted that, at some point, he was informed of Winefeldt's plea agreement.

Sims testified at the postconviction hearing that when he was informed that his trial had been delayed until August 24, 1998, he did not specifically ask trial counsel whether or not any continuances had been requested or granted. He was certain, however, that trial counsel never mentioned a continuance to him. Sims said that he could not understand why a last-minute plea agreement between Winefeldt and the State would merit a continuance

because trial counsel had already discussed the possibility of Winefeldt's testifying against Sims and they had already reviewed various statements that Winefeldt had made to the police. To Sims' knowledge, no deposition of Winefeldt was taken by trial counsel and Sims was not made aware, after May 12, of any new information relating to Winefeldt's proposed testimony. Sims claimed that trial counsel did not inform him of a right to a speedy trial and that Sims was unaware that a motion to discharge could be filed. Sims entered into evidence transportation orders which reflected that he had not been transported to court on May 12.

The docket sheet from the trial court contains no entries between the time of the April 6, 1998, continuance and an August 11 reference to a transportation order. By letter dated May 13, 1998, file stamped May 14, the trial judge informed counsel that the case was set for trial on Monday, August 24. That same date, the trial judge sent a memorandum to the office of the court administrator stating the following with regard to the date of Sims' trial:

> [O]n this date we discussed commencing trial on August 24, 1998, with jurors from the August 17, 1998, panel. . . .
>
> The reason we have requested permission from the Presiding Judge to try this case in the last week of this panel, out of turn, is that this is the soonest date available for trial for counsel and the Court.

Various subpoenas calling witnesses to trial on April 2, 1998, were file stamped May 15 with an attached notation by the Douglas County investigator stating "Case Continued 5-15-98." New subpoenas were issued calling witnesses for August 25.

## 2. MOTION TO RECUSE

Before the postconviction hearing, the postconviction judge, who had also presided over Sims' trial, overruled a motion by Sims for the judge to recuse himself because Sims wished to call the judge as a witness. Sims' motion alleged that the judge had information relevant to Sims' attempt to prove prejudice from trial counsel's failure to protect his speedy trial rights. Sims explained that because there was no court entry definitively establishing the cause of the delay for Sims' trial beyond May 12, 1998, the judge would be required to testify as to his recollection of the reason Sims' trial did not take place on May 12. Sims also

wanted the judge to generally testify about the period between May 12 and August 24 to explain how the August 24 trial date was arrived at and what other trials, civil and criminal, took place during that time. In support of his motion, Sims referenced the judge's scheduling book, which he apparently wanted to subpoena or have the judge rely upon during his testimony. Sims' motion also asserted that the trial bailiff had subsequently developed Alzheimer's disease and that this fact left the judge as the only alternative witness to the scheduling of Sims' trial. Sims' motion to recuse was not accompanied by an affidavit.

The judge denied Sims' motion, explaining that he believed that any testimony he might have would not be competent because "anything I have to say about the delaying of trial can be gotten in [sic] with other sources and it is not an appropriate form of evidence for that trial." The judge explained that if it later became clear that his testimony was necessary, the judge would allow counsel to raise the issue again.

Before concluding his presentation of the evidence at the hearing, postconviction counsel called the judge as a witness. The judge denied the request to testify, explaining that he had already ruled that "at this stage of the proceeding any testimony that I would provide would be incompetent and not of any value in the proceeding as identified in case law."

### 3. POSTCONVICTION COURT'S CONCLUSIONS

The postconviction court concluded that Sims could not establish that trial counsel's performance was deficient, and it accordingly overruled Sims' motion for postconviction relief. With regard to the speedy trial issue, the postconviction court found that trial counsel had requested a second continuance on or before the May 12, 1998, trial date after learning of Winefeldt's plea and decision to testify for the State against Sims. The court concluded that even if the continuance was over Sims' objection, trial counsel waived Sims' speedy trial rights on his behalf for that period. The court concluded that the May 12 motion for a continuance was a reasonable strategic decision in light of the last-minute plea bargain agreement because a former codefendant's version of events could have changed in order to gain a more favorable position in a deal with the State. The court found that trial counsel was not ineffective for failing

to object to improper impeachment under *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), because any *Doyle* violation was harmless given the overwhelming evidence of Sims' guilt and the limited nature of the questioning.

## III. ASSIGNMENTS OF ERROR

Sims assigns as error that the postconviction court erred in (1) not recusing itself and (2) finding that Sims did not receive ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005).

## V. ANALYSIS

### 1. Ineffective Assistance

■ We first address Sims' claims that trial counsel was ineffective. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland*, to first show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. See *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005). In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *State v. Marshall, supra*; *State v. McHenry, supra*.

### (a) Failure to File Motion for Discharge

Sims argues he was deprived of effective trial counsel because trial counsel failed to make a motion for discharge following a violation of Sims' right to a speedy trial. Sims raised this issue on direct appeal from his conviction, but we held in *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999), that the record was insufficient at that time to resolve it.

In a postconviction action, when a defendant alleges he or she was prejudiced by trial counsel's failure to properly assert the defendant's speedy trial rights, the court must consider the merits of the defendant's speedy trial rights under *Strickland.* See, *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006); *State v. Meers*, 267 Neb. 27, 671 N.W.2d 234 (2003). Only if a properly made motion should have resulted in the defendant's absolute discharge, thus barring a subsequent trial and conviction, could the failure to make a motion for discharge be deemed prejudicial. See *State v. Meers, supra.* Sims alleges that a motion for discharge, if properly made, would have been granted because, as of May 23, 1998, both his statutory and constitutional speedy trial rights were violated. We address each of these in turn.

### (i) Statutory 6-Month Period

Neb. Rev. Stat. § 29-1207 (Reissue 1995) requires discharge of a defendant whose case has not been tried within 6 months after the filing of the information, unless the 6 months are extended by any period to be excluded in computing the time for trial. *State v. Washington*, 269 Neb. 728, 695 N.W.2d 438 (2005). Sims concedes that under § 29-1207, 149 days should be excluded from the 6-month period as attributable to his plea in abatement. Twelve days are excluded for his motions requesting new counsel, and 36 days are excluded for his April 6, 1998, motion to continue. The State does not assert any excluded periods attributable to State motions or to the trial court. According to Sims, excluding these periods attributable to his motions, he should have been brought to trial by May 23, 1998. Sims' alleged speedy trial violation stems from his assertion that the delay from May 23 and the actual trial on August 24 is not an excluded time period under § 29-1207.

The postconviction court found that trial counsel requested a second continuance on or before the May 12, 1998, trial date after learning of Winefeldt's plea agreement to testify against Sims. On appeal from a proceeding for postconviction relief, the trial court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003). Sims spends a great deal of time pointing out evidence that "suggest[s]" trial counsel did not make a motion to continue on or about May 12. Brief for appellant at 14. We conclude, based on a full review of the record, that the postconviction court was not clearly erroneous in concluding that a motion to continue was made by Sims' trial counsel on approximately May 12.

We have explained that "[w]hen a delay in trial is attributable to a defense motion for a continuance filed within the statutory period, defense counsel is not ineffective for failing to file a motion to dismiss." *State v. McHenry*, 268 Neb. 219, 230-31, 682 N.W.2d 212, 224 (2004). Sims asserts that even if trial counsel made a motion on May 12, 1998, to continue trial, the entire period of the delay until the August 24 trial is not attributable to the motion.

Section 29-1207(4)(b) provides that a period of delay *resulting from* a continuance granted at the request or with the consent of the defendant or his counsel is excluded from the speedy trial calculation. Sims, in effect, argues that the entirety of the delay after the May 12, 1998, continuance was not "resulting from" that motion. In *State v. Petty*, 269 Neb. 205, 211, 691 N.W.2d 101, 106 (2005), we considered the meaning of "resulting from" in the context of what must be shown in order to exclude from the 6-month speedy trial calculation the period of time specified by § 29-1207(4)(d), the period " 'resulting from the absence or unavailability of the defendant.' " We held that where a defendant fails to appear for a timely scheduled trial, the "resulting" delay from such absence or unavailability does not end immediately upon the defendant's reappearance. Instead, "further delay inevitably results from the fact that the court, prosecutors, witnesses, and all others involved with the case must adjust their schedules." *Id*. Indeed, other criminal cases will invariably have been set for trial and will be required in some cases to proceed

to trial to meet their own speedy trial constraints prior to the trial of the reappearing defendant. See *id.*

We also clarified in *Petty* that in order for a period of delay resulting from the defendant's absence to be excludable from the 6-month speedy trial period, no showing of "good cause," under § 29-1207(4)(f), need be made. Section 29-1207(4)(f) sets forth as excludable "[o]ther periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause." We recognized that under *State v. Letscher*, 234 Neb. 858, 861, 452 N.W.2d 767, 769 (1990), the excludable period under § 29-1207(4)(d) was limited to the period of time from the defendant's later availability to the next "reasonably available" trial date. We held that in determining whether time is excludable for speedy trial purposes under § 29-1207(4)(d), a trial date that is scheduled within 6 months after the defendant's reappearance will be presumed to be the next reasonably available trial date without the State's being required to present further evidence to justify the setting. *State v. Petty, supra.*

The reasoning of *Petty* is applicable here. In determining whether a period of delay is attributable to defense counsel's motion to continue, we need not inquire as to what extent there was "good cause" for the delay. Trial counsel's testimony at the postconviction hearing indicated that the August 24, 1998, trial date was the earliest practicable date given his and the judge's schedules that had been established well before the unexpected motion. As reflected in *Petty*, we recognize the complexity of that which can properly be considered "resulting from" a sudden change in a scheduled trial date.

We note that in arguing that the entire delay was not resulting from trial counsel's motion to continue, Sims sought to prove that already scheduled civil trials took precedence over the rescheduling of his criminal trial. We find this of no consequence to our resolution of Sims' ineffectiveness of counsel claim. Neb. Rev. Stat. § 29-1205 (Reissue 1995) states that "[t]o effectuate the right of the accused to a speedy trial . . . insofar as is practicable: (1) The trial of criminal cases shall be given preference over civil cases . . . ." As we stated in *State v. Watkins*, 190 Neb. 450, 452, 209 N.W.2d 184, 185 (1973), the provision of § 29-1205 to give preference of criminal over civil trials is

"obviously directory." To demand that all scheduled civil trials must accommodate the rescheduling of a criminal trial as a result of a defense motion to continue is hardly "practicable." There is nothing in the language of § 29-1207 which would demand an inquiry into whether civil trials took place between May 12 and August 24, 1998.

Sims also asserts that *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972), "was not followed." Brief for appellant at 15. In *Alvarez*, we addressed the "good cause" catchall provision of § 29-1207(4)(f) and held that in order to facilitate review, a general finding of a trial court that "good cause" existed under § 29-1207(4)(f) would no longer suffice. Rather, the trial court would be required to "make specific findings as to the cause or causes of such extensions and the period of extension attributable to such causes." *State v. Alvarez*, 189 Neb. at 292, 202 N.W.2d at 611.

Recognizing that the case was one of the first cases to reach this court involving Neb. Rev. Stat. §§ 29-1205 to 29-1209 (Reissue 1995), we explained that "[w]e now deem it *advisable* to recommend the following for *procedural uniformity*." (Emphasis supplied.) *State v. Alvarez*, 189 Neb. at 293, 202 N.W.2d at 611. We then set forth the following:

> When the district court sets a date for trial, which date is later than the statutory time allowed by section 29-1207, R. S. Supp., 1971, the court shall:
>
> (1) Advise the defendant of his statutory right to a speedy trial and the effect of his consent to a period of delay, and
>
> (2) Ascertain of record whether the defendant does or does not waive his right to a speedy trial and consent to the trial date set.

*Id.*

We do not find *Alvarez* to be applicable to the case at bar. As we have explained, no showing of "good cause" is required in this case because the period of delay was a result of a continuance requested by Sims' counsel. *Alvarez* concerned a period of delay under § 29-1207(4)(f) and not an excludable period, as presented here, under § 29-1207(4)(b). In *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004), we held that the statutory right to a speedy trial is not a personal right that can we waived

only by a defendant, and a defendant is therefore bound by counsel's motion for a continuance even if the defendant is opposed to the motion. A defendant can only be deemed not so bound in the event that counsel is a " " " 'farce and a sham.' . . ." ' " *Id.* at 232, 682 N.W.2d at 225. Sims does not argue that trial counsel was such a farce and a sham that he should not properly be considered his counsel for these purposes. Inasmuch as the procedural recommendations set forth in *Alvarez* could be deemed applicable to an excludable period under § 29-1207(4)(b), Sims fails to make any argument as to how the failure to follow such procedure violated his speedy trial rights where trial counsel waived that right on his behalf.

We conclude that the entirety of the period of delay from May 12 to August 24, 1998, is excludable under § 27-1207(4)(b), and, therefore, we find that Sims had no right to absolute discharge under the speedy trial act. Since the motion for discharge under the act would be unsuccessful, no prejudice can be shown by trial counsel's failure to make it. Trial counsel was not ineffective by failing to motion for discharge on the ground that Sims' statutory right to a speedy trial had been violated.

### (ii) Constitutional Right

We next consider Sims' contention that a motion for discharge would have been successful because his right to a speedy trial under U.S. Const. amend. VI and Neb. Const. art. I, § 11, was violated. Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id.* See, also, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

In analyzing the prejudice factor of this four-factor test, the U.S. Supreme Court in *Barker v. Wingo, supra*, explained that

there are three aspects: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the defendant, and (3) limiting the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. Of these three aspects, the third is considered most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532.

Sims' argument that his constitutional right to a speedy trial was violated is as follows:

> In the present case, the delay was substantial. Even considering any delay that was directly or indirectly the result of [Sims]. While the trial court tried to set reasonable restrictions on the delay when defense counsel requested the continuance to discover the late witnesses, the trial court allowed substantial delay in resolving the plea in abatement and trial once the three witnesses were discovered.

> Furthermore, [Sims] was prejudiced because he was in jail pending the trial, and the long delay allowed the [S]tate time to secure the perjury of Winefeldt.

Brief for appellant at 21. We find no merit to this argument.

In *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004), we did not specifically address counsel's ability to waive a defendant's constitutional right without the defendant's consent. But it appears clear that defense counsel's ability to waive a defendant's speedy trial right is likewise applicable to an analysis under the Sixth Amendment. Thus, in *Stewart v. Nix*, 972 F.2d 967 (8th Cir. 1992), in considering the second factor of the *Barker v. Wingo, supra*, balancing test for its resolution of the defendant's speedy trial claim, the court concluded that delays due to continuances sought by the defendant's counsel were attributable to the defendant regardless of whether the defendant authorized the continuances. See, also, *U.S. v. Titlbach*, 339 F.3d 692 (8th Cir. 2003). In *Stewart*, the court explained that "[g]enerally, motions for a continuance pertain to trial tactics or conduct of the trial process and are largely left to trial counsel's discretion. Courts will rarely interfere with or second-guess such motions unless counsel's action is so prejudicial as to make the trial unfair." 972 F.2d at 970. As the court in *People v. Bowman*, 138 Ill. 2d 131, 561 N.E.2d 633, 149 Ill. Dec. 263 (1990), further

explained, to hold otherwise would create an impractical burden on the State to inquire into the validity of counsel's representations lest the State be misled into acquiescing to a violation of a defendant's right to a speedy trial.

As already discussed, most delays in Sims' coming to trial are attributable to defense counsel. The delays were requested with the intention of adequately preparing Sims' defense. There is no contention by Sims that the delays impaired his defense. As stated by this court in *State v. Jameson*, 224 Neb. 38, 43, 395 N.W.2d 744, 747 (1986), "It would be a strange anomaly if a defendant could first ask for a series of continuances and then be immune from prosecution because he had not been granted a speedy trial. Even under the most liberal view of the sixth amendment, that argument will not 'hold water.'" Our analysis under the four-factor balancing test reveals no speedy trial violation in Sims' trial. Accordingly, we find no merit to Sims' claim that trial counsel was ineffective for failing to motion for absolute discharge for violation of his constitutional right to a speedy trial.

### (b) Failure to Make *Doyle* Objection

Sims also argues that trial counsel was ineffective for failing to object to improper prosecutorial commentary on Sims' post-arrest, post-*Miranda* silence, in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). Sims does not argue that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to make a *Doyle* objection. Sims apparently did not argue this issue to the postconviction court, and the postconviction court did not address the effectiveness of appellate counsel.

A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred where a defendant was represented by a different attorney on direct appeal than at trial and the alleged deficiencies in trial counsel's performance were known or apparent from the record. *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005). Upon review of the briefs in Sims' direct appeal, it is clear that appellate counsel, who was different than Sims' trial counsel, did not raise this issue even though it was apparent from the record. Thus, although for reasons different than those articulated by

the postconviction court, we affirm the conclusion that Sims cannot recover on a postconviction claim stemming from an alleged *Doyle* violation. See *State v. Moore, ante* p. 71, 718 N.W.2d 537 (2006) (likewise affirming denial of postconviction relief, albeit for reasons different from postconviction court).

## 2. FAILURE TO RECUSE

Finally, we consider Sims' allegation that the postconviction judge erred in failing to grant Sims' motion to recuse. Sims argues that his motion to recuse should have been granted because Sims called the judge as a witness in the postconviction action. Sims points out that under the Code of Judicial Conduct and Neb. Evid. R. 605, Neb. Rev. Stat. § 27-605 (Reissue 1995), a judge may not testify in a trial over which that judge is presiding.

■ Canon 3E of the Code of Judicial Conduct states that a judge shall not participate in any proceeding in which the judge's impartiality reasonably might be questioned, including, but not limited to, instances where the judge is, to his or her knowledge, "likely to be a material witness in the proceeding." Neb. Code of Jud. Cond., Canon 3E(1)(d)(iv) (rev. 2000). A trial judge is not generally considered a "material" witness in a case unless his or her testimony is actually material and necessary to the determination of the case, and cannot be acquired by other sources. See 46 Am. Jur. 2d *Judges* § 101 (2006). See, also, *Daniels v. State*, 650 So. 2d 544 (Ala. Crim. App. 1994); *Bresnahan, Jr. v. Luby*, 160 Colo. 455, 418 P.2d 171 (1966).

Rule 605 concerns the competency of a judge as a witness and states simply: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Rule 605 was drafted as a broad rule of incompetency designed to prevent a judge presiding at a trial from testifying as a witness in that trial on any matter whatsoever. *State v. Baird*, 259 Neb. 245, 609 N.W.2d 349 (2000).

Sims asserts that rule 605 and Canon 3E mandated that his postconviction judge recuse himself. The postconviction judge disagreed because the judge decided that he would not likely testify at the postconviction hearing. In fact, when Sims called the postconviction judge to testify, the judge refused to do so. The real question is whether the judge properly refused to testify at Sims' postconviction hearing, and thereby avoided the

prohibitions of Canon 3E and rule 605. We review the postconviction court's decision not to testify for an abuse of discretion. See, *People v. Reynolds*, 284 Ill. App. 3d 611, 673 N.E.2d 720, 220 Ill. Dec. 576 (1996); *State v. Lewis*, 147 N.C. App. 274, 555 S.E.2d 348 (2001).

In *State v. Joubert*, 235 Neb. 230, 455 N.W.2d 117 (1990), we recognized that a threshold showing must be made before a postconviction judge, who was also the presiding judge at trial, will be compelled to testify at a postconviction hearing. There is no rule of law which automatically disqualifies a judge who has presided at trial from subsequently considering a postconviction action. *Id.* To the contrary, it is generally encouraged that the postconviction petition be heard by the same judge that rendered the original judgment. See, e.g., *U.S. v. Battle*, 235 F. Supp. 2d 1301 (N.D. Ga. 2001); *People v. Neal*, 123 Ill. App. 3d 148, 462 N.E.2d 814, 78 Ill. Dec. 695 (1984); *State v. Wise*, 879 S.W.2d 494 (Mo. 1994). The judge's familiarity with the case is regarded as beneficial to all concerned because it furthers the goal of an efficient, expeditious, and fair decision on the motion. See *id.*

Obviously, all postconviction judges who also presided at the defendant's trial will have witnessed the trial proceedings. It would frustrate the objectives of encouraging the trial judge to sit for the postconviction action if movants were allowed, as a matter of course, to force a trial judge's recusal from postconviction actions simply by calling the judge as a witness. *State v. Wise, supra.* In *State v. Joubert, supra*, we ultimately rejected the defendant's assertion that his postconviction judge should have been disqualified in order to be available as a witness by reasoning that "the record [does not] support an assertion that the judge had any information not readily available from other sources." *Id.* at 234-35, 455 N.W.2d at 122.

Most courts have likewise recognized a "heightened scrutiny" involved in the question of whether a judge can be compelled to be a witness. *U.S. v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004). These courts generally require some threshold showing of necessity for the testimony. See, *Hensley v. Alcon Laboratories, Inc.*, 197 F. Supp. 2d 548 (S.D.W. Va. 2002); *People v. Kriho*, 996 P.2d 158 (Colo. App. 1999); *Gold v.*

*Warden, State Prison,* 222 Conn. 312, 610 A.2d 1153 (1992); *State v. Wise, supra*; *Coleman v. State,* 194 Mont. 428, 633 P.2d 624 (1981); *State ex rel. Hall v. Niewoehner,* 116 Mont. 437, 155 P.2d 205 (1944); *In re Disqualification of Schweikert,* 110 Ohio St. 3d 1209, 850 N.E.2d 714 (2005); *Inscoe v. Inscoe,* 121 Ohio App. 3d 396, 700 N.E.2d 70 (1997); *In re Whetstone,* 354 S.C. 213, 580 S.E.2d 447 (2003). Necessity is generally shown when the information sought by the proposed testimony both is relevant on a crucial point and is unobtainable from other sources. See, generally, *id.* Alleged necessity notwithstanding, judges will not be compelled to testify as to the mental processes or reasons that motivated the judge in his or her official acts. *United States v. Morgan,* 313 U.S. 409, 61 S. Ct. 999, 85 L. Ed. 1429 (1941); *United States v. Cross,* 516 F. Supp. 700 (M.D. Ga. 1981), *reversed on other grounds* 708 F.2d 631 (11th Cir. 1983).

 We agree that a threshold showing of necessity must be made and hold that a defendant in a postconviction action can compel the postconviction judge, who was also the judge at trial, to testify only if (1) the judge possesses factual knowledge, (2) that knowledge is highly pertinent to the fact finder's task, and (3) the judge is the only possible source of testimony on the relevant factual information. See, *U.S. v. Roth, supra.* See, also, *United States v. Frankenthal,* 582 F.2d 1102 (7th Cir. 1978). Applying these principles, it is clear that the judge did not abuse his discretion in refusing to testify at Sims' hearing on his motion for postconviction relief. Sims sought the judge's testimony to explain why, during the period between May 12 and August 24, 1998, civil cases were given preference over Sims' criminal case. The judge's testimony was also sought to generally illuminate the period of May 12 to August 24 and to explain whether trial counsel made a May 12 motion to continue the trial. As already discussed, any evidence as to civil versus criminal trials conducted during that period is largely irrelevant. The relevant issues to Sims' ineffective assistance claims were evidenced through other sources. The postconviction judge stated that any information he might have could be obtained from other sources. We conclude that the judge properly denied Sims' call to testify. Because the postconviction judge did not

testify, he also properly denied Sims' motion to recuse based upon bias incurred by a trial judge's testifying in his or her own proceedings.

## VI. CONCLUSION

Delay in bringing Sims to trial is attributable to trial counsel's motions for the purpose of properly preparing Sims' defense, and we find no violation of Sims' right to a speedy trial. Therefore, trial counsel was not ineffective for failing to make a motion to discharge. The issue of trial counsel's ineffectiveness for failing to make a *Doyle* violation is procedurally barred. We find the postconviction judge did not abuse his discretion in denying Sims' motion to recuse. For these reasons, we affirm the judgment of the postconviction court.

AFFIRMED.