IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. BELINA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TRAVIS BELINA, APPELLANT.

Filed March 18, 2025.    No. A-24-171.

Appeal from the District Court for Madison County: MARK A. JOHNSON, Judge. Affirmed.

Eric M. Hagen, of Liberty Law Group, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

MOORE, PIRTLE, and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Travis Belina appeals from his conviction in the district court for Madison County of theft by deception ($1,500 to $4,999). On appeal, he assigns that his due process rights were violated when the district court instructed the jury on two separate theft offenses though he was charged with a single offense, that the State suppressed discoverable and exculpatory evidence, and that the district court denied Belina's motion to disqualify the prosecutor. For the reasons contained herein, we affirm.

### STATEMENT OF FACTS

Belina owned a feedlot where he began providing backgrounding services for the Fore-Quarters Feedlot in 2019. As a backgrounder, Belina's role was to take in young, small cattle, rear them until the cattle reached a certain size and weight, and then send the cattle back to the Fore-Quarters Feedlot to be finished and sold. In the summer of 2022, the owners of the

- 1 -

Fore-Quarters Feedlot noticed that the ear tags used to identify their cattle had been cut off and an in-person count at Belina's feedlot revealed that they were missing over 50 of their cattle. Several of Belina's former employees advised that Belina had taken various steps to create the impression that he was rearing more cattle than were actually in his care in order to collect unearned yardage fees, and that Belina had some of the cattle from the Fore-Quarters Feedlot slaughtered for Belina's own use.

On March 21, 2023, Belina was charged by information with theft by unlawful taking or disposition ($5,000 or more), a Class IIA felony, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 2016). The information alleged that the theft had occurred between January and August 2022.

At a pretrial hearing on September 8, 2023, the State informed the district court that though the information charged only one count of theft by unlawful taking or disposition, the State also intended to adduce evidence regarding theft by deception and would be seeking a jury instruction on the additional offense. The State argued that this was permissible under *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007), which held that the "theft statute is unitary[.]"

An amended information was filed on October 6, 2023, charging Belina with the same count as the original information, but alleging that the offense had occurred between November 2020 and August 2022.

On October 26, 2023, Belina filed a motion to disqualify the Madison County Attorney, Joseph Smith, from prosecuting the case. The motion alleged that of the 19 witnesses deposed by the defense, 18 of them had indicated that they did not make a report to law enforcement but instead were contacted and interviewed by Smith. This suggested "a very realistic appearance of impropriety and the appearance of personal animosity" as Smith had conducted an investigation without the assistance of law enforcement and without a victim initiating a claim against Belina. Further, Belina alleged that because Smith was both the prosecutor and the lead investigator, he was protected by the work product doctrine and would not be required to provide the defense with reports, interviews, and other documents "typically available through a law enforcement investigation[.]" The motion stated that Smith was also likely to be a necessary witness for the defense as he was the only individual with knowledge regarding the investigation into the alleged theft. As a result, Belina alleged that this conflict would cause him substantial prejudice at trial. The parties presented argument on the motion at a pretrial hearing on November 14 and the district court took the matter under advisement.

In an order entered on November 22, 2023, the district court denied Belina's motion to disqualify Smith from prosecuting the case. The court referenced the State's response to the motion which set forth Smith's actions in following up on leads he had received into potential criminal matters involving Belina. The court noted that Belina had presented no testimony or evidence in support of his motion to establish the need for disqualification. Rather, Belina provided only "a general and very vague response" to the court's inquiry regarding the county attorney's possible testimony. The court noted that Belina had not identified a particular witness or a topic of impeachment. The court also noted that 19 of the 25 witnesses listed on the amended information had been deposed by Belina, and thus Belina had full opportunity to review all fact witnesses' testimony under oath for the purposes of impeachment at trial.

The district court observed that the Nebraska Supreme Court Rules of Professional Conduct require a prosecutor to make timely disclosure of all exculpatory evidence or information. The court also noted the constitutional mandate for disclosure in criminal cases through precedent, including *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The court concluded that though Belina complained that the county attorney was both the investigator and prosecutor in the case, he failed to demonstrate prejudice or animus, and no particularized testimony was sought.

On November 27, 2023, the State filed a motion requesting that the district court provide the attached instructions to the jury. One of the proposed instructions included elements for both theft by unlawful taking or disposition and theft by deception. Belina offered no objection to the State's proposed jury instructions. The matter was taken under advisement.

On December 10, 2023, the district court entered an order allowing the State to pursue more than one class of theft through a single count or indictment. The court cited Neb. Rev. Stat. § 28-510 (Reissue 2016) (statute regarding consolidation of theft offenses) and Nebraska case law for the authority that the State was permitted to file multiple counts of theft arising from one factual circumstance or, in the alternative, one count of theft with multiple theories of guilt arising from one circumstance. Under either scenario, the court stated that the defendant may only be convicted of one count of theft that arises from the same set of circumstances and likewise, may only be punished for one count of theft as defined by multiple statutes. Further, the court cited to *State v. Jonusas*, 269 Neb. 644, 694 N.W.2d 651 (2005), in which the Nebraska Supreme Court held that § 28-510 placed the defendant on notice that he could be convicted of theft in any manner described under Neb. Rev. Stat. §§ 28-509 to 28-517 (Reissue 2016) and thus, he could have formulated his defense strategy accordingly.

However, contrary to the State's proposed jury instruction, the district court also found that Belina must be found guilty beyond a reasonable doubt of either theft by unlawful taking or disposition or theft by deception, or both, or not guilty. The court noted that the jury must find at least one of the classes of theft beyond a reasonable doubt by unanimous vote and may not "merge" a finding of guilt by some jury members believing one theory and others believing another theory.

A jury trial took place over 5 days in December 2023. Throughout the trial the State presented evidence and argument about both theft by unlawful taking or disposition and theft by deception by Belina. Additional details regarding the trial will be set forth in the analysis section below as necessary to address the assigned errors.

At the jury instruction conference following the presentation of evidence, Belina objected to an instruction containing the elements of both theft by unlawful taking or disposition and theft by deception, arguing that any instruction related to theft by deception should not be included because Belina was not specifically charged with that offense in the information. The district court overruled the objection, referring to its December 10 order on the matter.

The case was submitted to the jury, and the following day, the jury unanimously found Belina guilty of theft by deception in the amount of $1,500 to $4,999. The district court accepted the jury's verdict and found Belina guilty of the count.

A sentencing hearing was held on February 23, 2024. Belina was sentenced to a term of 48 months of probation with various conditions, including 48 days in jail to be served on consecutive weekends.

Belina appeals.

## ASSIGNMENTS OF ERROR

Belina assigns, restated, that his due process rights were violated when (1) the district court instructed the jury on two separate theft offenses, as § 28-510 was unconstitutionally applied; (2) the State suppressed discoverable and exculpatory evidence; and (3) the district court denied Belina's motion to disqualify the prosecutor.

## STANDARD OF REVIEW

A constitutional issue not presented to or passed upon by the trial court is not for consideration on appeal. *State v. Bershon*, 313 Neb. 153, 983 N.W.2d 490 (2023).

The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

A motion to disqualify an attorney is addressed to the discretion of the trial court, whose findings will not be disturbed absent evidence of abuse. *McCully, Inc. v. Baccaro Ranch*, 279 Neb. 443, 778 N.W.2d 115 (2010).

## ANALYSIS

### AS-APPLIED CONSTITUTIONAL CHALLENGE

Belina assigns that the district court erred by instructing the jury on two separate theft offenses, as this resulted in an unconstitutional application of § 28-510. Belina contends that he was not adequately put on notice regarding the conduct for which he was prosecuted, depriving him of due process under the Fourteenth Amendment to the United States Constitution and Article I, § 3 of the Nebraska Constitution.

The proper procedure for raising and preserving a constitutional challenge differs, depending on whether it is a facial or an as-applied challenge. See *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). While a plea of not guilty preserves an as-applied constitutional challenge, such a challenge must be specifically raised to the trial court. *Id*. It is, and has long been, the rule that for a question of constitutionality to be considered on appeal, it must have been properly raised in the trial court. *Id*. An issue of constitutionality must be specifically called to the trial court's attention in some way so that the court has an opportunity to rule upon it. If not so raised, the issue will be considered to have been forfeited. *Id*.

The record does not show that Belina raised any constitutional issue before the district court. It is incumbent upon an appellant to supply a record which supports his or her appeal. *Id*. Belina's objection at the jury instruction conference to the inclusion of an instruction on theft by deception because he had not been charged with that offense in the information, does not suffice. At no point was the district court asked to decide anything pertaining to a constitutional issue.

We conclude that by not raising the issue of constitutionality to the district court, Belina forfeited it. We also note that Belina failed to comply with Neb. Ct. R. App. P. § 2-109(E), which requires a party asserting the unconstitutionality of a statute to file and serve notice thereof with the clerk. Accordingly, we do not further consider this assignment of error.

Belina next assigns that his due process rights were violated because the State suppressed discoverable and exculpatory evidence, which raises a reasonable probability that had the evidence been disclosed and used effectively, it would have produced a different outcome. Belina argues that at trial he learned witnesses had been "interviewed by the State throughout the course of its investigation and never disclosed to Defense Counsel, three of which testified to providing exculpatory information to the State." Brief for appellant at 34. Belina contends that "the list of unreported witnesses with information relating to the case is not limited to those identified in trial," and that the disclosure of these unreported witnesses may have led to the discovery of impeachment evidence and other evidence favorable to Belina. Brief for appellant at 35.

At trial, the defense called three witnesses who testified that during the timeframe alleged in the amended information, Belina had brought his own cattle, and cattle belonging to others with their consent, to be slaughtered. The testimony by these three defense witnesses conflicted with the inference made by the State that during the timeframe alleged in the amended information, Belina had exclusively taken cattle from the Fore-Quarters Feedlot to be slaughtered.

Belina moved for a mistrial following each of the three witnesses' testimony, arguing that the State had failed to disclose the exculpatory evidence regarding Belina taking cattle not belonging to the Fore-Quarters Feedlot to be slaughtered, resulting in a *Brady* violation. The State argued that it had interviewed the three witnesses only after being notified by Belina that they would be called by the defense during trial. Belina acknowledged that he had interviewed all three witnesses prior to trial and that his "real concern is who else is out there that hasn't been disclosed." The district court denied all three of Belina's motions for mistrial, finding that the defense was not prejudiced given that the allegedly exculpatory evidence was derived from their own witnesses, the information was known or knowable to the defense, and the information was adduced during trial.

The Nebraska Supreme Court has explained:

In *Brady v. Maryland*, [373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963),] the U.S. Supreme Court laid down the principle that irrespective of the good or bad faith of the prosecution, its suppression of evidence favorable to an accused violates due process if the evidence is material to either guilt or punishment. The purpose of the Brady rule is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure the disclosure of evidence of such significance that, if suppressed, would deprive the defendant of a fair trial. As refined by subsequent case law, there are three components to a Brady violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued such that there is a reasonable probability that the suppressed evidence would have produced a different verdict; i.e., the suppressed evidence must be "'material either to guilt or to punishment.'" [See *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (quoting *Brady v. Maryland, supra*).]

*State v. Clifton*, 296 Neb. 135, 162-63, 892 N.W.2d 112, 134 (2017).

We agree with the district court's conclusion that no *Brady* violation occurred, as Belina cannot show that he was prejudiced by the State's alleged failure to disclose information gathered from its interviews with the three defense witnesses. As the district court observed, all three individuals were called as defense witnesses, the alleged exculpatory evidence was known to the defense prior to trial, and the evidence was adduced during trial. Given these circumstances, Belina cannot show that this evidence was suppressed nor that there is a reasonable probability that the evidence would have produced a different verdict. See *State v. Clifton, supra*.

We also reject Belina's claim that the State's failure to disclose the information gathered from the three defense witnesses suggests that there were additional "unreported witnesses" with information favorable to Belina. Nothing in the record suggests that the State spoke with any of the three individuals prior to them being identified as defense witnesses, or that there were any witnesses that the State had failed to endorse.

This assignment of error fails.

MOTION TO DISQUALIFY PROSECUTOR

Finally, Belina assigns that the district court erred in denying his motion to disqualify the prosecutor as Smith "was the lone investigator and sole possessor of knowledge of the entirety of the investigation, which was never turned over to the defense." Brief for appellant at 38. He argues that Smith withheld reports, witness information, and statements, including those favorable to Belina, from the defense. Belina contends that Smith acting as the only investigator created the appearance of impropriety and prevented the defense from calling the prosecutor as a witness, which violated Belina's due process rights.

When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct. *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024). Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *Id*. A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct. *Id*.

As a general rule a prosecutor should withdraw from a case when he testifies at trial on behalf of the State. This general rule does not apply when the defense calls the prosecutor as a witness. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). A prosecutor need not be disqualified from trying a case absent a showing that he is or will become a necessary witness for the defense. *Id*. Where there are other viable methods available to the defendant for the introduction of evidence, the court should not allow defendant's counsel to raise the possibility of calling the prosecutor as a witness merely to disqualify the prosecutor from the trial of the case. *Id*.

When a party seeks to disqualify an opposing attorney by calling that attorney as a witness, the court must strike a balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case. *Beller v. Crow*, 274 Neb. 603, 742 N.W.2d 230 (2007), *overruled on other grounds, Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). The party moving to disqualify an opposing attorney bears the burden of establishing that the attorney's testimony will be necessary. *Id*. A court cannot order disqualification simply upon the moving party's representation that the lawyer it seeks to

disqualify is a necessary witness; the key is the evidence showing that the lawyer is a necessary witness. *Id*.

Though Belina asserts that Smith was likely a necessary witness due to his role as both investigator and prosecutor, he does not allege what specific testimony would have been given by Smith. In his brief, Belina describes Smith's testimony as "sought-after," but then notes only that when he moved to disqualify Smith, "the trial court responded in bewilderment, interrogating Counsel on what possible purposes the defense might have to call an investigator." Brief for appellant at 38. Belina does not elaborate as to his purposes for calling Smith as a witness, other than to describe his investigation, nor did he attempt to call Smith as a witness at trial. Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy the requirement that the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Regarding Belina's assertion that Smith was the "sole possessor of knowledge" regarding the theft investigation, Smith stated during argument on Belina's motion to disqualify that he had no firsthand knowledge regarding the case. Rather, any information obtained by Smith had come from his witness interviews. The record reflects that Belina deposed all the State's endorsed witnesses who were called at trial and therefore had the opportunity to thoroughly evaluate the fact witnesses prior to trial.

To the extent that Belina argues that Smith in his role as prosecutor withheld exculpatory evidence, we have rejected this claim above.

We find no abuse of discretion in the district court's denial of Belina's motion to disqualify the prosecutor and this assignment of error fails.

## CONCLUSION

For the reasons stated herein, we affirm Belina's conviction and sentence.

AFFIRMED.